No. 23-5669

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

———————————

KAYLA GORE ET AL.,

*Plaintiff-Appellants*,

v.

WILLIAM LEE ET AL.,

*Defendant-Appellees*.

———————————

On Appeal from the Judgment of the United States
District Court for the Middle District of Tennessee
(No. 3:19-cv-00328)

———————————

**AMICUS CURIAE BRIEF OF AMICI STATES KANSAS, ALABAMA, ALASKA, ARKANSAS, GEORGIA, IDAHO, INDIANA, IOWA, KENTUCKY, LOUISIANA, MISSISSIPPI, MISSOURI, MONTANA, NEBRASKA, NORTH DAKOTA, OKLAHOMA, SOUTH CAROLINA, TEXAS, UTAH, AND WEST VIRGINIA IN SUPPORT OF DEFENDANTS-APPELLEES AND AFFIRMANCE**

———————————

KRIS KOBACH
*Attorney General*
ANTHONY POWELL
*Solicitor General*
ERIN GAIDE
*Assistant Attorney General*

OFFICE OF ATTORNEY GENERAL
STATE OF KANSAS
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Phone: (785) 296-2215
Anthony.Powell@ag.ks.gov
Erin.Gaide@ag.ks.gov
*Counsel for Amici*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................. iii

**IDENTIFICATION AND INTERST OF AMICI** .................................................1

**ARGUMENT** ............................................................................................................2

   I.   The Sixth Circuit should not recognize a new right to informational privacy in one's transgender status or gender identity ........................................3

     a.   The Sixth Circuit has long recognized it has a different, more limited test for informational privacy than other circuits .......................................5

     b.   The Sixth Circuit should not adopt the reasoning of circuits that have expressed doubt as to the correctness of their own caselaw or declined to apply it  ...............................................................................................................7

     c.   The Sixth Circuit should not adopt the reasoning of courts whose decisions rest on unstable foundations ...........................................................11

   II.   Plaintiff-Appellants misstate the law and ignore obvious solutions to their alleged due process harms .....................................................................14

**CONCLUSION** .....................................................................................................18

**CERTIFICATE OF COMPLIANCE** ................................................................20

**CERTIFICATE OF SERVICE** ..........................................................................21

# TABLE OF AUTHORITIES

## Cases

*Arroyo Gonzalez v. Rossello Nevares*, 305 F. Supp. 3d 327 (D.P.R. 2018)............17

*Bloch v. Ribar*, 156 F.3d 673 (6th Cir. 1998) ............................................. 10, 11, 12

*Borucki v. Ryan*, 827 F.2d 836 (1st Cir. 1987) ........................................................17

*Daury v. Smith*, 842 F.2d 9 (1st Cir. 1988)............................................................17

*Dillard v. O'Kelley*, 961 F.3d 1048 (8th Cir. 2020) (*en banc*)........................ 13, 14

*Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022) ..............................19

*Doe v. City of New York*, 15 F.3d 264 (2d Cir. 1994) ............................................15

*Doe v. Garland*, 17 F.4th 941 (9th Cir. 2021) ........................................................14

*Doe v. Gray*, 75 F.4th 710 (7th Cir. 2023)..............................................................14

*Gutierrez v. Lynch*, 826 F.2d 1534 (6th Cir. 1987) .................................................16

*Harrington v. Almy*, 977 F.2d 37 (1st Cir. 1992) ...................................................17

*In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42 (D.C. Cir. 2019) .................................................................................................................14

*J. P. v. DeSanti*, 653 F.2d 1080 (6th Cir. 1981) .................................................8, 12

*Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998) ....................... 10, 11

*L. W. by & through Williams v. Skrmetti*, 83 F.4th 460 (6th Cir. 2023)..................19

*Lambert v. Hartman*, 517 F.3d 433 (6th Cir. 2008) ...........................................8, 12

*Lee v. City of Columbus*, 636 F.3d 245 (6th Cir. 2011)......................................8, 12

*Leiser v. Moore*, 903 F.3d 1137 (10th Cir. 2018)............................................. 13, 14

*McElrath v. Califano*, 615 F.2d 434 (7th Cir. 1980) ..............................................19

*Nat'l Aeronautics & Space Admin. v. Nelson*, 562 U.S. 134 (2011)........ 8, 9, 12, 13

*Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425 (1977)...............................................9

*Nunes v. Massachusetts Dep't of Correction*, 766 F.3d 136 (1st Cir. 2014).... 14, 17

*Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566 (6th Cir. 2002)......
.................................................................................................................. 10, 11

*Payne v. Taslimi*, 998 F.3d 648 (4th Cir.), *cert. denied*, 142 S. Ct. 716 (2021)......14

*Powell v. Schriver*, 175 F.3d 107 (2d Cir. 1999)....................................................15

*United States v. Kravetz*, 706 F.3d 47 (1st Cir. 2013) ............................................17

*Vega-Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174 (1st Cir. 1997)..................17

*Walls v. City of Petersburg*, 895 F.2d 188 (4th Cir. 1990).....................................14

*Whalen v. Roe*, 429 U.S. 589 (1977) .......................................................................9

*Wilson v. Collins*, 517 F.3d 421 (6th Cir. 2008)......................................................9

*Wyatt v. Fletcher*, 718 F.3d 496 (5th Cir. 2013)....................................................14

## Statutes

63 Oklahoma Statute § 1-321 .....................................................................................5

8 U.S.C. § 1324a(b)(1)(A) ...................................................................21
Ala. Code § 31-13-9 ...........................................................................21
Cal. Lab. Code § 2814 .........................................................................21
La. Stat. Ann. § 23:995 .......................................................................21
Miss. Code Ann. § 71-11-3 .................................................................21
Mont. Admin. R. 37.8.311 .....................................................................5
S.B. 180, 2023 Leg. Sess. (Kan. 2023) ..................................................5
S.C. Code Ann. § 41-8-20 ...................................................................21
Tenn. Code Ann. § 4-58-103(c) ..........................................................20
Tenn. Code Ann. § 50-1-703(a)(1) ......................................................20
Tex. Gov't Code Ann. § 673.001, *et seq.* ..........................................21

## Other Authorities

Kansas Attorney General Opinion 2023-2 ................................................5

## Regulations

Tenn. Comp. R. & Regs. 0770-01-05-.13(2)(c)(1) ...............................20

## IDENTIFICATION AND INTERST OF AMICI

The States of Kansas, Alabama, Alaska, Arkansas, Georgia, Idaho, Indiana, Iowa, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nebraska, Oklahoma, North Dakota, South Carolina, Texas, Utah, and West Virginia maintain records of vital statistics and identification for their citizens and those born in the state. In order to maintain uniform, complete, and accurate records, each State has passed laws and enacted policies controlling the creation, organization, and preservation of those records. Each unique system was chosen by each State's legislature and executives for accuracy, efficiency, and as the best use of limited state resources.

In addition, Kansas and other Amici States have adopted laws and policies related to biological sex markers on vital records and identification documents. *See, e.g.*, S.B. 180, 2023 Leg. Sess. (Kan. 2023); Kansas Attorney General Opinion 2023-2; 63 Oklahoma Statute § 1-321; Mont. Admin. R. 37.8.311. These laws and policies could be impacted by the outcome of this litigation, and the States have a strong interest in defending them.

Accordingly, Amici States file this brief in support of Defendant-Appellees under Federal Rule of Appellate Procedure 29(a)(2).

## ARGUMENT

This Court should affirm the district court's order dismissing Plaintiff-Appellants' claim that Tennessee's common-sense, scientifically accurate policy regarding the sex designation on birth certificates (whereby biological males are listed as male and biological females are listed as female) somehow violates the federal Constitution. Plaintiff-Appellants' challenge to Tennessee's policy of not allowing individuals to change the sex marker on their birth certificates—which Plaintiff-Appellants frame as a denial of their informational privacy rights and substantive due process rights—amounts to a challenge to Tennessee's ability to create, organize, and preserve its records of vital statistics and identification in the way the State sees fit. Their arguments elevate modern theories about gender identity over the State's decision to recognize that there are two sexes determined at birth.

The right to informational privacy has been assumed—but never actually recognized—by the Supreme Court. The Sixth Circuit does recognize the right in some limited circumstances, but has never come close to announcing a right to informational privacy in one's transgender status or gender identity. And, under its test for assessing such a right, it should not do so now. Plaintiff-Appellants essentially concede this by urging the Court to apply fringe, out-of-circuit caselaw. As it has repeatedly done, the Court should reject this invitation. But if the Court does

consider other circuits' tests, it will find that these courts have often called their own precedent into question or avoided applying it altogether. The circuits that continue to find new informational privacy rights do so based on their own ill-supported caselaw, which this Court has already rejected.

Plaintiff-Appellants also claim Tennessee has violated their substantive due process rights by requiring them to present birth certificates containing their biological sex (as opposed to gender identities) when accessing state benefits and employment. But Tennessee law does not require this. Tennessee law permits any number of documents to prove identity, and as Plaintiff-Appellants' own complaint demonstrates, they already possess these documents. Finally, even if Tennessee regulations require a birth certificate for some discretionary state licenses, Plaintiff-Appellants have completely failed to allege facts showing that this affects them. They have not stated any desire to obtain one of these licenses, let alone made an effort to do so.

Plaintiff-Appellants have failed to state a claim for a violation of their constitutional rights. The Court should affirm the dismissal of their claims.

## I.   The Sixth Circuit should not recognize a new right to informational privacy in one's transgender status or gender identity

Plaintiff-Appellants claim they have a right to informational privacy in their transgender statuses or gender identities. The Supreme Court has never expressly

recognized a constitutional right to informational privacy, and it is unsettled whether one exists at all. *See Nat'l Aeronautics & Space Admin. v. Nelson*, 562 U.S. 134, 161 (2011) (Scalia, J., concurring) ("Our due process precedents, even our 'substantive due process' precedents, do not support any right to informational privacy."); *Lee v. City of Columbus*, 636 F.3d 245, 260 n.8 (6th Cir. 2011) ("Whether a broader right to nondisclosure of private information even exists remains an open question under the Supreme Court's recent jurisprudence."); *Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (discussing how, at that point, the Supreme Court has only twice assumed without deciding there was such a right). Nevertheless, the circuits have identified a right to informational privacy in some circumstances, and each has developed its own test to determine if the right is implicated in any given context.

The Sixth Circuit has not recognized a right to informational privacy in one's transgender status or gender identity (or come anywhere close to doing so). Therefore, Plaintiffs are forced to rely on out-of-circuit cases, which they claim to have established this right. They invite the Court to follow this precedent. The Court should decline the invitation. Courts should be hesitant to expand constitutional rights beyond those expressly protected by the constitution. *J. P. v. DeSanti*, 653 F.2d 1080, 1090 (6th Cir. 1981) ("Inferring very broad 'constitutional' rights where the Constitution itself does not express them is an activity not appropriate to

4

the judiciary.").  Appropriately, the Sixth Circuit has only recognized the unexpressed right to informational privacy in very limited circumstances not implicated here.  And it has repeatedly differentiated its test from those of other circuits and rejected their approaches.  Reliance on out-of-circuit caselaw would be especially specious now when those circuits have expressed doubt as to the correctness of their own precedent or have built their caselaw on unstable foundations.

### a. The Sixth Circuit has long recognized it has a different, more limited test for informational privacy than other circuits

The Supreme Court has assumed without deciding there is a constitutional right to non-disclosure of certain private information under the Due Process Clause of the Fourteenth Amendment.  *See Nelson*, 562 U.S. at 138; *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 457 (1977); *Whalen v. Roe*, 429 U.S. 589, 598–99 (1977).  Some circuits have taken *Nixon* and *Whalen* to stand for the proposition that there is a general constitutionally protected right to informational privacy.  The Sixth Circuit is not one of them.  *See Wilson v. Collins*, 517 F.3d 421, 429 (6th Cir. 2008) ("Whereas some other circuits have recognized the existence of a constitutional right of privacy in various types of confidential information, the Sixth Circuit has held that the Constitution does not encompass a general right to nondisclosure of private information." (internal citations and quotation marks omitted)); *see also Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 574 (6th Cir.

2002) ("This Court has been loath to view either *Whalen* or *Nixon* as having created a constitutional privacy right that protects against the disclosure of personal information.").

There is no general right to informational privacy in this Circuit. When such a right is claimed, the Court considers the issue narrowly and applies a very stringent test. "This circuit has read *Whalen* and *Nixon* narrowly, and will only balance an individual's interest in nondisclosure of informational privacy against the public's interest in and need for the invasion of privacy where the individual privacy interest is of constitutional dimension." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1061 (6th Cir. 1998). This right is "restricted to protecting those personal rights that can be deemed fundamental or implicit in the concept of ordered liberty." *Overstreet*, 305 F.3d at 574 (internal quotation marks omitted) (quoting *J.P.*, 653 F.2d at 1090). Therefore, the Court must find the right rises to a constitutional dimension, disclosure would cause harm, and the harm is not outweighed by a legitimate government interest.

In only a few circumstances have parties shown their claimed rights pass this test. For example, a woman's privacy interest in the explicit details of her rape rose to a constitutional dimension because of the humiliating nature of such information. *Bloch v. Ribar*, 156 F.3d 673, 685 (6th Cir. 1998). The right was violated when a sheriff released those details during a press conference for no legitimate

6

reason. *Id.* at 656. And undercover police officers' privacy interest in their home addresses rose to a constitutional dimension when criminals—against whom the officers testified—requested the addresses. *Kallstrom*, 136 F.3d at 1059, 1062. The criminals had a "propensity for violence and intimidation," creating a specific threat to the personal safety of the officers. *Id.* at 1059. Release of that information when the city could not show a compelling government interest in doing so violated their rights. *Id.* at 1065.

Plaintiff-Appellants' asserted right to informational privacy in their transgender status or gender identity does not come close to passing this test. They have not pled facts demonstrating that the right to privacy in one's transgender status or gender identity is "fundamental or implicit in the concept of ordered liberty." *Overstreet*, 305 F.3d at 574. They have not pled facts indicating they face a specific harm if the information is released. They have not shown the government causes harm by disclosing this information. (Nor could they. The State does not have this information to disclose.) They have not shown there is no legitimate reason for the State to include someone's biological sex on their birth certificate such that the balance of harms favors them. Therefore, the Court should not find they have stated a claim for informational privacy.

**b. The Sixth Circuit should not adopt the reasoning of circuits that have expressed doubt as to the correctness of their own caselaw or declined to apply it**

The Sixth Circuit has repeatedly recognized that its test is much narrower than those of other circuits. *See Lambert*, 517 F.3d at 440 ("This court, in contrast to some of our sister circuits, 'has narrowly construed the holdings of *Whalen* and *Nixon* to extend the right to informational privacy only to interests that implicate a fundamental liberty interest.'"); *Lee*, 636 F.3d at 259 (same); *Bloch*, 156 F.3d at 683–84 ("Unlike many other circuits, this court has narrowly construed the holdings of *Whalen* and *Nixon* to extend the right to informational privacy only to interests that implicate a fundamental liberty interest."). It has repeatedly declined to adopt out-of-circuit precedent. *J. P.*, 653 F.2d at 1088–90.[1]

The Court should not break with circuit precedent now and extend the alleged right to informational privacy by adopting a test or borrowing reasoning from any circuit that has cast doubt on its own caselaw in this area. As *Nelson* makes clear, the Supreme Court has never actually recognized a right to informational privacy. 562 U.S. at 138 ("We assume, without deciding, that the Constitution protects a privacy right of the sort mentioned in *Whalen* and *Nixon*."); *id.* at

---

[1] The Sixth Circuit has already expressly rejected some circuits' tests and reliance on *Whalen*. *J. P. v. DeSanti*, 653 F.2d 1080, 1088–90 (6th Cir. 1981) (rejecting the approach of the Third, Fifth, and Eleventh Circuits). To the extent any of these circuits have reached this issue and found there is an informational privacy right in transgender status or gender identity (Amici do not believe they have), the Court should not change course and adopt their approaches now.

146 ("[N]o other decision has squarely addressed a constitutional right to informa-

tional privacy.").  Some members of the Court took issue with assuming the Con-

stitution protected such a right at all and would have expressly held there is no

right to informational privacy.  *See Nelson*, 562 U.S. 134, 161 (Scalia, J., concur-

ring).

In recent years, some circuits have taken notice of the Court's practice of

"assuming without deciding" a constitutional right to informational privacy exists

and have questioned their own caselaw on the subject.  The Eighth Circuit—sitting

*en banc*—acknowledged *Nelson* "confirmed that our court and other circuits erred

in reading inconclusive statements in *Whalen* and *Nixon* as Supreme Court recog-

nition of a substantive right to informational privacy."  *Dillard v. O'Kelley*, 961

F.3d 1048, 1054 (8th Cir. 2020) (*en banc*).  The Tenth Circuit has likewise called

into question its own precedent.  "[I]t can no longer be said in the context of gov-

ernment disclosure of information that there is no dispute that confidential medical

information is entitled to constitutional privacy protection.  The Supreme Court has

stated that this is an open question—it has never held that there is a constitutional

right to prevent government disclosure of private information."  *Leiser v. Moore*,

903 F.3d 1137, 1144 (10th Cir. 2018) (internal citation, alteration, and quotation

marks omitted).  While neither of these circuits have expressly overturned their

9

prior precedent,[2] this Court should hesitate before relying on any cases they themselves acknowledge may be incorrect.

Other Circuits have continued the practice of "assuming without deciding" that the Constitution protects a right to informational privacy (often without addressing *Nelson*) when the case can be resolved on other grounds.  *See, e.g.*, *Doe v. Gray*, 75 F.4th 710, 717 (7th Cir. 2023); *Doe v. Garland*, 17 F.4th 941, 947 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 2815 (2022) (recognizing without discussing the conflict); *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 72 (D.C. Cir. 2019); *Nunes v. Massachusetts Dep't of Correction*, 766 F.3d 136, 144 (1st Cir. 2014); *Wyatt v. Fletcher*, 718 F.3d 496, 505 (5th Cir. 2013).  The Fourth Circuit has both assumed without deciding that the right exists and stated that it does, as it acknowledged in *Payne v. Taslimi*, 998 F.3d 648, 655 (4th Cir.), *cert. denied*, 142 S. Ct. 716 (2021).[3]  The Sixth Circuit should not do as these

---

[2] The Eighth Circuit stopped short of holding the right does not exist because Defendants had not raised the issue below and because the case could be resolved on other grounds (the clearly established prong of qualified immunity).  *Dillard v. O'Kelley*, 961 F.3d 1048, 1054 (8th Cir. 2020).  The Tenth Circuit likewise resolved the case on the clearly established prong of qualified immunity.  *Leiser v. Moore*, 903 F.3d 1137, 1144 (10th Cir. 2018).

[3] When it did recognize the existence of a right to informational privacy, the Fourth Circuit applied a reasonable-expectation-of-privacy test and held there was no constitutional right to privacy in sexual orientation as against a city's background check of potential employees.  *Walls v. City of Petersburg*, 895 F.2d 188, 193 (4th Cir. 1990).

courts do and ignore persuasive Supreme Court authority to assume without deciding that this right exists.

### c. The Sixth Circuit should not adopt the reasoning of courts whose decisions rest on unstable foundations

The Court should not break with circuit precedent and adopt out-of-circuit reasoning from any circuit that rests its caselaw on a foundation that would not be supported by Sixth Circuit precedent.

The Second Circuit has recognized the "right to maintain the confidentiality of one's transsexualism." *Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999). With little discussion as to its reasoning, the *Powell* court upheld a jury verdict against a corrections officer who had revealed "—in the presence of other inmates and staff members—that [the prisoner] had had a sex-change operation and that she was HIV-positive." *Id.* at 109. The court, bound by its own precedent, considered this release of information a violation of the prisoner's "constitutional right to maintain medical confidentiality." *Id.* at 112.

The Sixth Circuit should not follow *Powell*. First, *Powell* was decided without the benefit of the Supreme Court's clear statement on the uncertainty of the right to informational privacy in *Nelson*. As such, the *Powell* court was bound by its own precedent. The Second Circuit had already held people with HIV had a constitutionally protected right to confidentiality in their medical records. *See Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994). However, even without the

benefit of *Nelson* (which it now has), the Sixth Circuit has held there is no general constitutional right to privacy in medical information. *See Gutierrez v. Lynch*, 826 F.2d 1534, 1539 (6th Cir. 1987) ("[W]e conclude that plaintiff's medical records are not protected by the constitutional right to privacy. We find this case to be indistinguishable from *Whalen v. Roe*.").

Further, the Court should not take one single sentence out of context without considering the underlying facts, which are highly distinguishable. There is a world of difference between the unauthorized release of medical information to other prisoners and the inclusion of someone's biological sex on a birth certificate. Medical information is broadly considered personal and private; information on an identity document is not. People generally have control over their own medical files and disclosure of those files; the state is the one who authorizes, issues, controls, and regulates birth certificates. Finally, Tennessee is not disclosing whether Plaintiff-Appellants have had sex change operations or any other diagnoses they may have received. To the extent it can be argued the State is disclosing information at all (it is not), it would only be disclosing the Plaintiff-Appellants' sex as recognized by a doctor when they were born. Even the Second Circuit has not applied *Powell* to facts such as these. The Court should, therefore, not follow *Powell* or give it any persuasive weight.

12

The Court should also refrain from adopting the reasoning and conclusions of district courts, particularly when those courts misstate the law.  For example, the district court in the District of Puerto Rico held the Commonwealth's policy of not allowing transgender individuals to change the sex marker on their birth certificates violated their right to informational privacy.  *Arroyo Gonzalez v. Rossello Nevares*, 305 F. Supp. 3d 327, 333 (D.P.R. 2018).  In reaching this conclusion, the court quoted *Nelson*—"The confidentiality branch, also referred to as 'informational privacy', *see Nelson*, 562 U.S. at 146 (2011)"—without any acknowledgement that *Nelson* only *assumed* the right existed.  *Id.*

The *Arroyo Gonzalez* district court then extended First Circuit caselaw to places the First Circuit Court of Appeals has never even taken it.  *See id.* (citing *Daury v. Smith*, 842 F.2d 9, 14 (1st Cir. 1988)).  The First Circuit has both stated, "*Whalen* stops short of recognizing a constitutional right in informational privacy," *Borucki v. Ryan*, 827 F.2d 836, 841 (1st Cir. 1987) and held the right might exist, *Nunes*, 766 F.3d at 143.  But the First Circuit has never found that the right (if it exists) has been violated under facts such as these.  *See id.*; *United States v. Kravetz*, 706 F.3d 47, 63 (1st Cir. 2013); *Vega-Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 183 (1st Cir. 1997); *Harrington v. Almy*, 977 F.2d 37, 43 (1st Cir. 1992); *Daury*, 842 F.2d at 14.  This Court should not recognize a brand-new right based

on First Circuit caselaw if the First Circuit Court of Appeals would not even do so. *Arroyo Gonzalez* is therefore inapplicable and unpersuasive.

***

In sum, the Sixth Circuit has repeatedly declined to apply other circuits' tests when considering the right to informational privacy. No other circuit has recognized a right to informational privacy in one's transgender status or gender identity by applying the same test the Sixth Circuit has applied for decades. It is unclear whether those that are not bound by their own precedent would recognize the right today. And the Supreme Court has cast doubt on whether *any* right to informational privacy is protected by the Constitution. Nothing in Plaintiff-Appellants' complaint or opening brief justifies throwing off precedent and clear statements by this Court in order to recognize a brand-new right unsupported by the text of the Constitution.

## II. Plaintiff-Appellants misstate the law and ignore obvious solutions to their alleged due process harms

Plaintiff-Appellants have also claimed Tennessee's policy violates their Fourteenth Amendment rights to substantive due process, in part because they are "forced" to disclose their birth certificates to access government benefits, employment, etc. Amend. Complaint at 2, ¶ 3; 12, ¶ 54. As this court is aware, the Supreme Court recently made it abundantly clear substantive due process rights—if

14

they exist—"must be 'deeply rooted in this Nation's history and tradition' and 'implicit in the concept of ordered liberty.'" *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 231 (2022) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)). *See also L. W. by & through Williams v. Skrmetti*, 83 F.4th 460, 473 (6th Cir. 2023) (recognizing that, even before *Dobbs*, "substantive due process is a treacherous field" (internal quotation marks omitted)). States have included a baby's biological sex on the birth certificate since they began issuing them. Thus, it is questionable whether there is a substantive due process right to change one's birth certificate so that one's biological sex is not disclosed to government agencies and potential employers. *C.f. McElrath v. Califano*, 615 F.2d 434, 441 (7th Cir. 1980) ("Simply stated, the claim of the appellants to receive welfare benefits on their own informational terms does not rise to the level of a constitutional guarantee.").

Even if there is a right not to be forced to disclose one's biological sex, Tennessee has not infringed on it. Contrary to Plaintiff-Appellants' claims, Tennessee does not require them to disclose their birth certificates in the way they claim.[4] Tennessee accepts, among other things, birth certificates, passports, or drivers' licenses to obtain state health benefits. *See* Tenn. Code Ann. § 4-58-103(c). The

---

[4] Plaintiff-Appellants have attached parts of the below statutes to their Opening Brief. *See* Aplt. Add. at 10–20. They include only the parts that support their position. But the full statutes show Tennessee accepts any number of documents.

same is true to prove for employment verification, Tenn. Code Ann. § 50-1-703(a)(1), or to obtain financial assistance for housing, Tenn. Comp. R. & Regs. 0770-01-05-.13(2)(c)(1).  While Plaintiff-Appellants had to submit additional documentation at times, they have not alleged they were prevented from accessing other identification documents, or, indeed, in changing the sex marker on existing documents.  *See* Amend. Complaint at 19, ¶ 89 ("Ms. Gore has [changed] her name and gender marker to be consistent with her female gender identity in all her identity documents except her birth certificate.  This includes, inter alia, her Tennessee state identification card, Tennessee voter registration card, and social security records."); *id.* at 22, ¶ 108 ("In 1996, Ms. Combs [changed] her name on her driver's license, Social Security records and passport."); *id.* at 26, ¶ 135 ("Aside from updating the name and gender marker on her driver license, L.G. has [changed] her name and gender marker in her social security records and U.S.  Passport to be consistent with her female gender identity."); *id.* at 30, ¶ 159 ("K.N. has [changed] her name and gender marker to be consistent with her female gender identity in all her identity documents except her birth certificate.  This includes, inter alia, her driver license, social security records, and U.S. Passport.").  Tennessee does require a birth certificate to become a professional counselor, Tenn. Comp. R. & Regs. 0450-01-.05(1)(f), but not one of the Plaintiff-Appellants has expressed any

interest in becoming a counselor, let alone pled they were harmed by this specific requirement, *see generally* Amend. Complaint.

Amici note that not all Plaintiff-Appellants even reside in Tennessee. *See* Complaint at 5, ¶¶ 17, 18 (L.G. resides in Kentucky, and K.N. resides in California). The federal government sets the standards for employment eligibility and verification and permits various documents to prove identify and eligibility to work. *See* 8 U.S.C. § 1324a(b)(1)(A). This has been adopted by several states. *See*, *e.g.*, Ala. Code § 31-13-9; Cal. Lab. Code § 2814; La. Stat. Ann. § 23:995; Miss. Code Ann. § 71-11-3; S.C. Code Ann. § 41-8-20; Tex. Gov't Code Ann. § 673.001, *et seq.* Beyond this, states generally require individuals to prove their identities to access benefits and accept multiple identification documents.

Therefore, assuming there is a substantive due process right to nondisclosure of biological sex, Plaintiff-Appellants failed to allege they were actually harmed by the State. Plaintiff-Appellants have failed to allege they were prevented from accessing employment or benefits because of their birth certificates. And Tennessee and other states often accept multiple identification documents to access employment and state benefits. Not only have Plaintiff-Appellants failed to allege they were prevented from obtaining these other documents, they have acknowledged they have them in hand. Tennessee and other states may require a birth certificate when a person applies for a discretionary state license, but Plaintiff-Appellants

17

have failed to allege that they tried (or even want) to apply for one of these licenses. They have suffered no harm from the policy.

The Court should not accept Plaintiff-Appellants' argument that Tennessee's policy harms them by requiring them to disclose a birth certificate to access government benefits or employment.

## CONCLUSION

For the reasons stated above, Amici States urge the Court to affirm the dismissal of Plaintiff-Appellants' complaint.

Dated: December 28, 2023                    Respectfully submitted,

/s/*Anthony J. Powell*
Anthony Powell
*Solicitor General*
*Counsel for Amici*

## CERTIFICATE OF COMPLIANCE

This brief complies with the Court's type-volume limitations of Fed. R. App. P. 32(a)(7)(b) because it contains 4,371 words, excluding portions exempted by Fed. R. App. P. 32(f) and 6 Cir. R. 32(b)(1).

This brief also complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in proportionally spaced typeface using Times New Roman 14-point font in Microsoft Word.

/s/*Anthony J. Powell*
Anthony Powell
*Solicitor General*

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. App. P. 25(d) and 6 Cir. R. 25(f), I certify that a true and exact copy of this brief has been filed via the Court's electronic filing system on December 28, 2023. That system sends a Notice of Docket Activity to all registered attorneys in this case. Under 6 Cir. R. 25(f)(1)(A), "[t]his constitutes service on them and no other service is necessary."

/s/*Anthony J. Powell*
Anthony Powell
*Solicitor General*