No. 23-5669

# In the United States Court of Appeals for the Sixth Circuit

KAYLA GORE, JAIME COMBS, L.G., and K.N.,

*Plaintiffs-Appellants*,

v.

WILLIAM BYRON LEE, in his official capacity as Governor of the State of Tennessee; and LISA PIERCEY, in her official capacity as Commissioner of the Tennessee Department of Health,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Middle District of Tennessee (Nashville Division)
No. 3:19-cv-00328
Honorable Eli Richardson

## PLAINTIFFS-APPELLANTS' REPLY BRIEF

John T. Winemiller
MERCHANT & GOULD P.C.
800 S. Gay Street, Ste. 2150
Knoxville, TN 37929
(865) 380-5960
jwinemiller@merchantgould.com

Omar Gonzalez-Pagan
LAMBDA LEGAL DEFENSE AND
    EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005-3919
(212) 809-8585
ogonzalez-pagan@lambdalegal.org

*Counsel for Plaintiffs-Appellants*
(Additional counsel listed on signature block.)

# **TABLE OF CONTENTS**

Table of Authorities ............................................................................ iii

Introduction ........................................................................................1

Argument.............................................................................................2

    I.     The Court Should Reverse and Remand for Application of the
          Proper 12(b)(6) Standard.........................................................2

    II.    Plaintiffs Plausibly Alleged an Equal Protection Claim. ....................7

          A.    Plaintiffs Properly Alleged Disparate Treatment. ......................7

          B.    The Policy Is Subject to Heightened Scrutiny. ...........................8

    III.   Plaintiffs Plausibly Alleged an Informational Privacy Claim.............13

          A.    Plaintiffs Properly Alleged a Claim under *Kallstrom*...............14

          B.    Plaintiffs Properly Alleged a Claim under *Bloch*. ....................18

          C.    The Complaint Plausibly Alleges that Defendants Are
                Responsible for the Privacy Infringement Caused by the
                Policy. ................................................................................22

    IV.   Plaintiffs Plausibly Alleged the Policy Lacks Sufficient
          Justification. ........................................................................23

Conclusion ........................................................................................28

Certificate of Compliance ..........................................................................29

Certificate of Service ............................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*A.C. v. Metro. Sch. Dist. of Martinsville*,
  75 F.4th 760 (7th Cir. 2023), *cert. denied*, No. 23-392, 2024 WL 156480
  (U.S. Jan. 16, 2024) ...................................................................................9

*Adams v. Sch. Bd. of St. Johns Cnty.*,
  57 F.4th 791 (11th Cir. 2022) (en banc) .............................................9

*Barber v. Overton*,
  496 F.3d 449 (6th Cir. 2007) ...............................................15, 16, 17

*Beaty v. United States*,
  937 F.2d 288 (6th Cir. 1991) ...............................................................6, 7

*Berger v. City of Mayfield Heights*,
  154 F.3d 621 (6th Cir. 1998) ...............................................................23

*Bloch v. Ribar*,
  156 F.3d 673 (6th Cir. 1998) .................................18, 19, 20, 21, 22

*Bormuth v. Cnty. of Jackson*,
  870 F.3d 494 (6th Cir. 2017) (en banc) ...........................................11

*Bostock v. Clayton County*,
  140 S. Ct. 1731 (2020)...................................................................10, 11

*City of Cleburne, Tex. v. Cleburne Living Ctr.*,
  473 U.S. 432 (1985)...................................................................12, 23, 25

*Cooper Butt ex rel Q.T.R. v. Barr*,
  954 F.3d 901 (6th Cir. 2020) ................................................................1

*Deen v. Egleston*,
  597 F.3d 1223 (11th Cir. 2010) ........................................................23

*Déjà vu of Nashville v. Metro. Gov't of Nashville & Davidson Cnty.*,
  274 F.3d 377 (6th Cir. 2001) ...............................................15, 16,17

*Dobbs v. Jackson Women's Health Org.*,
　597 U.S. 215 (2022).......................................................................................14

*Dodds v. United States Dep't of Educ.*,
　845 F.3d 217 (6th Cir. 2016) ......................................................................27

*Doe v. City of Mansfield, Ohio*,
　No. 22-3052, 2023 WL 1822208 (6th Cir. Feb. 8, 2023)............................14, 21

*Doe v. Mich. State Univ.*,
　989 F.3d 418 (6th Cir. 2021) .........................................................................6

*E.E.O.C. v. R.G. &. G.R. Harris Funeral Homes, Inc.*,
　884 F.3d 560 (6th Cir. 2018), *aff'd sub nom. Bostock*,
　140 S. Ct. 1731 (2020)...................................................................................11

*Eastwood v. Dep't of Corr.*,
　846 F.2d 627 (10th Cir. 1988) .....................................................................20

*Eisenstadt v. Baird*,
　405 U.S. 438 (1972)......................................................................................27

*Free the Nipple-Fort Collins v. City of Fort Collins*,
　916 F.3d 792 (10th Cir. 2019) .....................................................................10

*Fulton v. Goord*,
　591 F.3d 37 (2nd Cir. 2009) ...........................................................................2

*George v. SI Grp., Inc.*,
　36 F.4th 611 (5th Cir. 2022) ...........................................................................2

*Goel v. Bunge, Ltd.*,
　820 F.3d 554 (2nd Cir. 2016) .........................................................................3

*Grimm v. Gloucester County School Board*,
　972 F.3d 586 (4th Cir. 2020) .........................................................................9

*J.E.B. v. Alabama*,
　511 U.S. 127 (1994).........................................................................................9

*Kallstrom v. City of Columbus*,
　136 F.3d 1055 (6th Cir. 1998) .........................................................14, 15, 16

*Kenny v. Bartman*,
   No. 16-2152, 2017 WL 3613601 (6th Cir. May 19, 2017) ...............................22

*Koala v. Khosla*,
   931 F.3d 887 (9th Cir. 2019) ...................................................................3

*L.W. v. Skrmetti*,
   83 F.4th 460 (6th Cir. 2023), *petitions for cert. pending*,
   Nos. 23-466, 23-477, 23-492 ...............................................................9, 11

*Lambert v. Hartman*,
   517 F.3d 433 (6th Cir. 2008) .........................................13, 16, 18, 21

*Lee v. City of Columbus*,
   636 F.3d 245 (6th Cir. 2011) ..................................................................21

*Leiser v. Moore*,
   903 F.3d 1137 (10th Cir. 2018) .........................................................19

*Marvaso v. Sanchez*,
   971 F.3d 599 (6th Cir. 2020) ....................................................................1

*Mathews v. Lucas*,
   427 U.S. 495 (1976)................................................................................23

*Matson v. Bd. of Ed.*,
   631 F.3d 57 (2d Cir. 2011) .....................................................................19

*Mattox v. City of Forest Park*,
   183 F.3d 515 (6th Cir. 1999) .................................................................22

*Michigan Bell Tel. Co. v. Strand*,
   305 F.3d 580 (6th Cir. 2002) .................................................................27

*NASA v. Nelson*,
   562 U.S. 134 (2011)................................................................................19

*Nguyen v. INS*,
   533 U.S. 53 (2001)..................................................................................10

*Obergefell v. Hodges*,
   576 U.S. 644 (2015)................................................................................12

*Rinaldi v. Yeager*,
384 U.S. 305 (1966)..........................................................................23

*Romer v. Evans*,
517 U.S. 620 (1996)..........................................................12, 24, 25, 27

*Sessions v. Morales-Santana*,
582 U.S. 47 (2017)............................................................................10

*Sharp v. S&S Activewear, L.L.C.*,
69 F.4th 974 (9th Cir. 2023) ..............................................................3

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
600 U.S. 181 (2023)..........................................................................11

*Summe v. Kenton Cnty. Clerk's Off.*,
604 F.3d 257 (6th Cir. 2010) ............................................................21

*Thompson v. Hebdon*,
7 F.4th 811 (9th Cir. 2021) ..............................................................11

*Thorne v. City of El Segundo*,
726 F.2d 459 (9th Cir. 1983) ............................................................20

*United States v. Virginia*,
518 U.S. 515 (1996)............................................................................9

*United States v. Westinghouse Elec. Corp.*,
638 F.2d 570 (3d Cir. 1980) .............................................................20

*W. Va. State Bd. of Educ. v. Barnette*,
319 U.S. 624 (1943)..........................................................................12

*Wiles v. Ascom Transport System, Inc.*,
478 F. App'x 283 (6th Cir. 2012) ......................................................21

*Wurzelbacher v. Jones-Kelley*,
675 F.3d 580 (6th Cir. 2012) ......................................................13, 22

**STATUTES**

Tenn. Code Ann. § 49-2-801 .............................................................27

Tenn. Code Ann. § 49-6-310 .............................................................27

### **INTRODUCTION**

At this stage, courts must accept all factual allegations in Plaintiffs' Complaint as true, draw all reasonable inferences in Plaintiffs' favor, and only then determine whether those facts and inferences plausibly give rise to an entitlement to relief. *See Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020). The district court erred in not doing so. The Court should not entertain Defendants' invitation to repeat this error. Instead, it should reverse and remand with instructions that the district court consider the sufficiency of Plaintiffs' allegations under the proper legal standard.

When the proper legal standard is applied, it is evident Plaintiffs have properly pleaded that Tennessee's Birth Certificate Policy violates their rights to equal protection and informational privacy under the Fourteenth Amendment. Questions about whether the Policy is properly tailored and should survive judicial scrutiny (under any standard) are matters best decided by the trial court in the first instance, although Plaintiffs have properly pleaded the Policy does not survive such scrutiny.

Plaintiffs need not prove their case at the motion to dismiss stage. They simply need to meet the low bar of "alleg[ing] facts that, if accepted as true, are sufficient to state a claim to relief that is plausible on its face." *Cooper Butt ex rel Q.T.R. v. Barr*, 954 F.3d 901, 904 (6th Cir. 2020). Plaintiffs have met this bar.

# **ARGUMENT**

## I. The Court Should Reverse and Remand for Application of the Proper Rule 12(b)(6) Standard.

Defendants urge this Court to independently assess the sufficiency of Plaintiffs' claims rather than remand to the district court to conduct a proper Rule 12(b)(6) inquiry. Appellees' Br. 54. Although this Court may determine itself whether Plaintiffs' claims are plausibly alleged (they are), it is not required to do so. Where, as here, the dismissal of a complaint for failure to state a claim principally turns on the district court's erroneous rejection of well-pleaded, yet contested, factual allegations and its impermissible reliance on facts outside the pleadings, the district court is best positioned to re-examine the sufficiency of the complaint under the appropriate standard.

Other courts have recognized that reversing error-ridden decisions and remanding to the district court with instructions to apply the proper 12(b)(6) standard is the most appropriate course. *See*, *e.g.*, *George v. SI Grp., Inc.*, 36 F.4th 611, 619, 624 (5th Cir. 2022) (holding district court misapplied 12(b)(6) standard by going beyond the pleadings, requiring data, considering testimony, and noting the failure to produce evidence, reversing, and remanding "claims for reevaluation under the proper standard for resolving a Rule 12(b)(6) motion"); *Fulton v. Goord*, 591 F.3d 37, 44-45 (2nd Cir. 2009) (remanding for district court to reconsider "adequacy of [plaintiff's] pleadings" because the court's initial analysis was based on a pervasive

"mischaracterization of [plaintiff's] claims"); *Goel v. Bunge, Ltd.*, 820 F.3d 554, 558-60 (2nd Cir. 2016) (vacating and remanding because district court "erred in roaming outside the pleadings" at motion to dismiss stage); *cf. Koala v. Khosla*, 931 F.3d 887, 904 (9th Cir. 2019) (reversing Rule 12(b)(6) dismissal and remanding for court to reconsider First Amendment claim under proper framework); *Sharp v. S&S Activewear, L.L.C.*, 69 F.4th 974, 977 (9th Cir. 2023) (vacating and remanding with instructions to reconsider the sufficiency of plaintiff's pleadings in light of certain legal principles).

Defendants' arguments against remand here are cursory and unpersuasive. First, Defendants incorrectly assert that "the questions presented are pure issues of law that this Court reviews *de novo*." Appellees' Br. 54. While Plaintiffs agree that the applicable standard of review for questions of law is *de novo*, this appeal turns principally on a contested factual question: What is sex? Plaintiffs' Complaint repeatedly alleges that a person's sex is more than their external genitalia at birth and is determined by gender identity. Appellants' Br. 22-23 (citing Complaint R.59, Page ID#381-82, 384, 386). Rather than accept these factual allegations as true or, at minimum, construe them in the light most favorable to Plaintiffs, the district court rejected them, went beyond the pleadings to rely on its own extraneous research, and agreed with Defendants that "sex" for purposes of Tennessee birth certificates means only external genitalia at birth, i.e., "sex (based on birth appearance)." Appellants'

3

Br. 23-26. Only after disregarding Plaintiffs' factual allegations concerning a person's sex did the district court assess the sufficiency of Plaintiffs' claims based on its own views and assumptions about the meaning of sex and the sex designation on a person's birth certificate, without regard to any evidence. *Id.* Because the district court made an improper factual determination on a 12(b)(6) motion, it is appropriate for this Court, as a court of review, to remand the case with instructions for the district court to re-evaluate the Complaint's sufficiency based on the facts alleged by Plaintiffs.

Second, Defendants say that Plaintiffs' remand request is based on a "few stray statements" that had no impact on the outcome below. Appellees' Br. 54. But, as explained in Plaintiffs' Opening Brief, the *entire opinion* below turns on the district court's failure to accept Plaintiffs' factual allegations as true. Appellants' Br. 25-26. For example, had the district court not made factual determinations outside the pleadings, it could not have found that a "birth certificate does not purport to say in any way what a person's sex is at any point after birth" and that "its purported statement about 'sex' at the time of birth is in reality a statement only about external genitalia." Opinion, R.110, PageID#2634. Had the district court accepted as true Plaintiffs' allegation that sex is determined by gender identity, it could not have concluded that "Plaintiffs' entire equal protection claim (of transgender-status-based disparate treatment) fails because that claim depends fully

on the plausibility and relevance of the proposition" "that their sex assigned at birth is not correct, based on a broad scientific and medical consensus that gender identity is determinative of one's sex." *Id.*, PageID#2612-13. And, had the district court not impermissibly relied on tabloids for the proposition that "[p]ersons certainly can have sex-change surgery for reasons unrelated to being transgender," it could not have concluded—contrary to Plaintiffs' factual allegations and the plain language of the statute—that Tenn. Code Ann. § 68-3-203(d) reflects neither anti-transgender animus nor disparate treatment because it applies equally to transgender and cisgender people. *Id.*, PageID#2618-2623. Far from "stray statements," the district court's failure to accept key factual allegations as true was outcome-determinative. Indeed, the summary judgment record shows that, had the court accepted the Complaint's factual allegations as true, Plaintiffs would have been able to prove those facts. Appellants' Br. 11-12 & n.2, 23 & n.3, 26 & n.5.

Third, Defendants' contention that the district court's analysis adhered to the allegations of the Complaint lacks any support. *See* Appellees' Br. 55. Defendants point to a single allegation in Plaintiffs' Complaint describing the State of Tennessee's typical practice of determining the sex designation on birth certificates based on external genitalia at the time of birth. *See id.* Much like the district court, Defendants ignore the remainder of the Complaint, including the factual allegations plausibly establishing that gender identity is determinative of sex, Appellants' Br.

22-23 (citing Complaint, R.59, Page ID#381-82, 384, 386), that the sex designation on Plaintiffs' birth certificates is incorrect, Complaint R.59, Page ID#376, 393-94, 397-98, 400, 402, 404, and that the State of Tennessee permits cisgender persons, but not transgender persons, to correct the sex listed on their birth certificates, *id.* Page ID#389.  At the motion to dismiss stage, the district court was required to construe *all factual allegations in favor of Plaintiffs*.  Construing an isolated allegation in favor of Defendants, to the exclusion of the Complaint as a whole, is inconsistent with the 12(b)(6) standard.

Lastly, the cases Defendants cite for the proposition that this Court should overlook the district court's errors and evaluate the sufficiency of Plaintiffs' Complaint with "fresh eyes," *see* Appellees' Br. 55, are distinguishable on their facts, and none forecloses Plaintiffs' remand request.  Although the court in *Doe v. Michigan State University* declined to examine whether the district court correctly applied the 12(b)(6) standard, there is no indication that the district court there rejected the facts pleaded in the complaint, roamed outside the complaint, or conducted a plausibility analysis based on its own allegations and so-called evidence, as did the district court here.  989 F.3d 418, 430 n.3 (6th Cir. 2021).  And the court in *Beaty v. United States* departed from its "normal[]" course of remanding issues not properly raised below for consideration by the district court in the first instance because the "only disagreement between the parties concern[ed] the legal

import of the undisputed facts."  937 F.2d 288, 290-91 (6th Cir. 1991).  Here, by contrast, the district court's misapplication of the 12(b)(6) standard implicates contested factual issues at the heart of Plaintiffs' claims, and the issues presented on appeal involve more than the application of a legal standard to undisputed facts.

Therefore, this Court may and should remand with instructions to reevaluate the Complaint's sufficiency.

## II.  Plaintiffs Plausibly Alleged an Equal Protection Claim.

### A.  Plaintiffs Properly Alleged Disparate Treatment.

Defendants' contention that "no one—*whether transgender or cisgender*—can amend a 'male' or 'female' designation unless it was factually inaccurate at the time of birth," Appellees' Br. 13, runs counter to the allegations in the Complaint. Plaintiffs specifically alleged that "while Defendants have promulgated rules and regulations permitting persons born in Tennessee the ability to correct the sex listed on a person's birth certificate to accurately identify the sex of such person, Defendants categorically prohibit transgender persons born in Tennessee from correcting the sex listed on their birth certificates in a manner consistent with their gender identity."  Complaint, R.59, PageID#389.[1]  This is enough to show that Plaintiffs plausibly alleged that they are being subjected to disparate treatment.

---

[1]     Defendants' *false* contention boggles the mind considering the record evidence showed that while Defendants prohibit transgender people from correcting the sex designation on their birth certificates to be consistent with their identity,

Defendants further try to recast the Policy as one where Tennessee birth certificates reflect sex designations based on external genitalia *only*. But again, this is contrary to the allegations in the Complaint, which at this stage must be accepted as true. It is also false. *See*, *supra*, note 1.

No matter how it is construed, Plaintiffs' Complaint properly alleges that non-transgender people are permitted to correct the sex designation on their birth certificates in a manner consistent with their identity, including based on characteristics other than genitalia, but transgender people cannot.[2] That is differential treatment.

**B.    The Policy Is Subject to Heightened Scrutiny.**

Defendants attempt to evade their burden by arguing that the Policy does not classify based on sex or transgender status. But the Policy does both, and both independently trigger heightened scrutiny.

---

Defendants permit other individuals, such as those born with ambiguous genitalia, to correct the sex designation on their birth certificates *after the time of recordation*, based on sex-related characteristics *other than* external genitalia. *See* Pls' MSJ Reply, R.93, PageID#1392-93 (citing record evidence).

[2]    Defendants argue Plaintiffs did not plead specific facts pertaining to people born with ambiguous genitalia. Appellees' Br. 16-17. But the court is required to construe the Complaint in the light most favorable to Plaintiffs, and Plaintiffs did allege other people were permitted to correct the sex designation on their birth certificates if they were not transgender, which includes people born with ambiguous genitalia. Moreover, given this demonstrable truth of which the district court was aware, at minimum, the district court erred in dismissing the Complaint with prejudice and without leave to amend.

***First*, the Policy classifies based on sex.**   Tennessee's Policy literally classifies people based on sex (as either "male" or "female" or "unknown") and only permits non-transgender people to be classified consistent with their identity, while denying transgender people the same.

This case is thus like the bathroom policies at issue in *A.C. v. Metropolitan School District of Martinsville*, 75 F.4th 760 (7th Cir. 2023), *cert. denied*, No. 23-392, 2024 WL 156480 (U.S. Jan. 16, 2024), *Adams v. School Board of St. Johns County*, 57 F.4th 791 (11th Cir. 2022) (en banc), and *Grimm v. Gloucester County School Board*, 972 F.3d 586 (4th Cir. 2020), as amended (Aug. 28, 2020).  In each of those cases, the policy at issue determined students' access to bathrooms designated as "male" or "female" based on their external genitalia, and in each of those cases the circuit courts applied intermediate scrutiny.

As the Supreme Court explained long ago, in unambiguous terms, "all gender-based classifications" are subject to heightened scrutiny.  *United States v. Virginia*, 518 U.S. 515, 555 (1996); *L.W. v. Skrmetti*, 83 F.4th 460, 479 (6th Cir. 2023) ("Laws premised on protected classifications, such as sex …, receive heightened review."), *petitions for cert. pending*, Nos. 23-466, 23-477, 23-492.

Defendants cannot erase the sex-based nature of the Policy by resorting to an "equal application" defense, which the Supreme Court has rejected in the context of sex classifications.  *See J.E.B. v. Alabama*, 511 U.S. 127, 142 n.13 (1994).

Defendants' argument that the Policy is immune from heightened scrutiny because it is based on biological differences fares no better. For one, Defendants confuse the presence of a classification with its justification. For another, laws that classify based on physiological differences still trigger heightened scrutiny. While "in some cases, … such differences justify differential treatment," they do "not always." *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 801 (10th Cir. 2019). And they certainly do not erase the existence of sex-based classifications. *Compare Nguyen v. INS*, 533 U.S. 53, 73 (2001) (applying heightened scrutiny to law differentiating between unwed mothers and unwed fathers and holding it survived heightened scrutiny), *with Sessions v. Morales-Santana*, 582 U.S. 47, 76 (2017) (applying heightened scrutiny to law differentiating between unwed mothers and unwed fathers and holding it did not survive heightened scrutiny).

Finally, discrimination based on transgender status necessarily entails discrimination based on sex. Even setting *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), aside for a moment, Defendants cannot explain how one can discriminate based on transgender status without considering a person's sex. A multitude of courts have so held, Appellants' Br. 34-36, and Defendants do not explain otherwise.

10

Furthermore, while the court in *L.W.* rejected "[i]mporting the Title VII test for liability into the Fourteenth Amendment," 83 F.4th at 485, lower courts' decisions "must comport with the 'reasoning or theory,' not just the holding, of Supreme Court decisions." *Thompson v. Hebdon*, 7 F.4th 811, 827 (9th Cir. 2021). The Supreme Court has explained that discrimination against transgender individuals "necessarily" is discrimination "because of sex." *Bostock*, 140 S. Ct. at 1744; *see also E.E.O.C. v. R.G. &. G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 571 (6th Cir. 2018), *aff'd sub nom. Bostock*, 140 S. Ct. 1731 (2020). And Justice Gorsuch has since explained that while what constitutes a race- or sex-based classification in the statutory context and under the Fourteenth Amendment *may be the same*, the former is categorically prohibited while the latter may be permissible if it satisfies heightened scrutiny. *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 308-09 (2023) (Gorsuch, J., concurring). The Court cannot simply ignore the reasoning of *Bostock* and *Harris Funeral Homes*.[3]

---

[3]    This does not require abandoning horizontal *stare decisis*. One, the court in *L.W.* could not have applied *Bostock*'s reasoning because it concluded the law there did not discriminate against transgender individuals. Two, this case is materially different from *L.W.*, which concerned the regulation of medical treatments. Three, this Court must also be mindful of vertical *stare decisis*, which requires it to "decide the same way as an unsuperseded holding of the U.S. Supreme Court." *Bormuth v. Cnty. of Jackson*, 870 F.3d 494, 520 (6th Cir. 2017) (en banc) (Rogers, J., concurring).

**Second, the Policy classifies based on transgender status, which independently triggers heightened scrutiny.** Defendants argue that classifications based on transgender status should not be subject to heightened scrutiny, relying on *dicta* in *L.W.* and vague appeals to the democratic process.

But a preference for majoritarian lawmaking cannot override the constitutional rights of a minority. If it could, the Supreme Court would not have struck down the state constitutional amendment discriminating against gay people in *Romer v. Evans*, 517 U.S. 620 (1996), the discriminatory ordinance in *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432 (1985), or the marriage bans wrongly upheld by this Court on such basis in *Obergefell v. Hodges*, 576 U.S. 644 (2015). In striking down those discriminatory laws, the Supreme Court adhered to a foundational principle of our constitutional democracy, that the "independence of the Judges is equally requisite to guard the Constitution and the rights of individuals, from … serious oppressions of the minor party in the community." *The Federalist No. 78*, at 437 (Alexander Hamilton) (Clinton Rossiter ed., 1961). Indeed, "[t]he very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts. … [F]undamental rights may not be submitted to vote; they depend on the outcome of no elections." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943).

Transgender people meet all the indicia necessary to warrant heightened scrutiny. Appellants' Br. 38-41. This Court should not countenance Defendants' make-believe world in which transgender people have not been historically subjected to discrimination and are politically powerful by ignoring history and present-day reality to insulate Tennessee's Policy from heightened review.

## III. Plaintiffs Plausibly Alleged an Informational Privacy Claim.

This Court has "recognized a constitutionally-protected informational-privacy interest in only two circumstances: (1) where the release of personal information may lead to bodily harm, and (2) where the released information relates to matters 'of a sexual, personal, and humiliating nature.'" *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 586 (6th Cir. 2012) (quoting *Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008)). When properly construed, Plaintiffs' Complaint properly alleges violations of their constitutionally protected informational privacy right under both circumstances.[4]

---

[4]     Defendants attempt to recast Plaintiffs' informational privacy right as the "right to compel the State to amend its birth certificates to reflect gender identity." Appellees' Br. 36. But Defendants improperly conflate the ultimate relief being sought with the cognizable privacy interest itself. The proper inquiry is to examine whether the information merits privacy protection.

After misconstruing the right in this hyper-specific manner, Defendants argue there is no historical support for such a right because Tennessee did not have a statewide birth certificate policy until 1881, after the Fourteenth Amendment was adopted in 1868. Appellees' Br. 38. But construing the right in such manner not only ignores this Court's precedents regarding constitutional informational privacy

**A.      Plaintiffs Properly Alleged a Claim under *Kallstrom*.**

In *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998), this Court recognized an informational privacy interest of constitutional dimension where the release of personal information could lead to bodily harm.  Plaintiffs have alleged as much.  Appellants' Br. 45-46.

*Kallstrom* does not require that the dangerous recipients who may wish to harm Plaintiffs be easily identifiable as a distinct group.  Defendants argue that Plaintiffs fail to satisfy *Kallstrom*'s requirement that sensitive information be disclosed to persons who are "particularly dangerous *vis-à-vis* the *plaintiffs*" because the Complaint does not allege disclosure to "any specific individual" and, instead, refers to threat of harm from "unknown persons."  Appellees' Br. 43.  This criticism is unfounded.

Neither *Kallstrom* nor its progeny supports Defendants' notion that Plaintiffs must identify with particularity the dangerous recipients of Plaintiffs' transgender

---

claims, but also demonstrates the absurdity of Defendants' approach, which would hollow out our constitutional protections to only apply to laws that existed *before* 1792 or 1868.  If a firearm that did not exist in 1792 is entitled to constitutional protection under the Second Amendment, a governmental policy that did not exist until after 1868 may violate the Fourteenth Amendment.

Furthermore, Defendants' reliance on *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), is misplaced, as this Court already held *Dobbs* has no bearing on its informational privacy jurisprudence.  *See Doe v. City of Mansfield, Ohio*, No. 22-3052, 2023 WL 1822208, at *3 (6th Cir. Feb. 8, 2023).

14

identity.  Appellants' Br. 48-49.  While *Kallstrom* did involve potential disclosure to identifiable members of a particular gang, this was not a determining factor in the Court's holding that "where the release of private information places an individual at substantial risk of serious bodily harm, possibly even death, *from a perceived likely threat*, the magnitude of the liberty deprivation … strips the very essence of personhood." 136 F.3d at 1062-64 (quotations omitted) (emphasis added).

Even in *Barber v. Overton*, relied on by Defendants, this Court did not delve into the identifiability of the dangerous recipients.  The Court simply held that the plaintiffs' relationship with the recipient of their sensitive information was "not defined by the clear animosity apparent in *Kallstrom*."  *Barber*, 496 F.3d 449, 457 (6th Cir. 2007).

Further still, Defendants ignore another decision by this Court that contradicts their notion that precedent requires Plaintiffs to identify the dangerous recipients of their sensitive information.  Appellants' Br. 48-49 (citing *Déjà vu of Nashville v. Metro. Gov't of Nashville & Davidson Cnty.*, 274 F.3d 377, 394-95 (6th Cir. 2001)).  In *Déjà vu*, this Court found that *Kallstrom* protected from public disclosure the names and residential addresses of adult entertainers because they had "in the past [] been stalked, harassed, and injured by customers," "a number of local organizations [took] a strong stance against [their] profession," and they feared those organizations would harass them at their home "as a result of [their] choice to engage

in erotic speech." 274 F.3d at 394-95. These "serious potential risks to [] physical safety and well-being" were sufficient for this Court to find *Kallstrom*'s reasoning applicable, even though (1) disclosure of the sensitive information had not yet occurred and (2) the dangerous recipients of that information were unidentified members of the public. *Id*. at 395. Similarly, Plaintiffs here have alleged and evidenced that forced disclosure of their transgender identity under Tennessee's Policy leads to "serious potential risks to [their] physical safety and well-being" and, thus, violates their informational due process rights. *Id.*

Defendants' insistence that *Kallstrom* requires Plaintiffs to identify with particularity the dangerous recipients of their sensitive information, despite having no basis in law, merely reflects Defendants' failure to appreciate hindsight bias. In *Kallstrom* and *Barber*, the disclosure had already occurred and, thus, the dangerous recipient was known and identifiable. *See Lambert*, 517 F.3d 433; *Barber*, 496 F.3d 449; *Kallstrom*, 136 F.3d 1055. In *Déjà vu*, however, the Court determined that *Kallstrom* prohibited the public dissemination of private information where no disclosure had yet occurred. 274 F.3d at 394-95. It necessarily follows that the recipients of protected private information need be neither known nor specifically identifiable.

The court's reasoning in *Déjà vu* also undermines Defendants' argument that *Kallstrom* cannot be applied to "generalized threats of violence." Appellees' Br. 44.

Defendants point to *Barber* for their assertion that "a specific risk of violence" is necessary to "give[] rise to a constitutional claim." *Id.* (citing *Barber*, 496 F.3d at 456). But *Barber* required no such thing. This Court in *Barber* did not address the *specificity* of danger; it simply held that the relationship between corrections officer and incarcerated person is not "defined by the clear animosity" present in *Kallstrom*. 496 F.3d at 457; *see also* Appellants' Br. 47-48, n.18.[5]

By contrast, in *Déjà vu*, this Court found that *Kallstrom* applied where plaintiffs reasonably feared future physical harm based on prior instances of stalking, harassment, and violence. 274 F.3d at 394-95. The same circumstances exist here. Each Plaintiff alleged that she personally and individually fears violence and physical harm from having to present a birth certificate that conflicts with her gender identity. Complaint, R.59, PageID#386, 393, 397, 401, 404. Further, Plaintiffs' Complaint explained that this fear is informed by Plaintiffs' "aware[ness] of the high incidence of violence and harassment directed at transgender persons." *Id.*, PageID#394, 398, 402, 405. These well-founded fears are precisely the same kind of "serious potential risks to [] physical safety and well-being" that this Court held were sufficient to invoke *Kallstrom* in *Déjà vu*. 274 F.3d at 395.

---

[5]     Because the *Barber* court had already found that the information disclosed was not of a sensitive nature worthy of protection, the discussion upon which Defendants rely may be more properly considered *dicta*.

17

Defendants' assertion that Plaintiffs must (1) "identify" the risk of violence in "specific circumstances" and (2) draw a "connection" between the high incidence of anti-trans violence and birth certificate disclosures has no legal basis. Neither *Kallstrom* nor its progeny imposes such a high burden on Plaintiffs, especially at the pleading stage. While Defendants may wish with all their might to cabin *Kallstrom*, they cannot do so by inventing additional pleading burdens not rooted in *Kallstrom*.

### B.    Plaintiffs Properly Alleged a Claim under *Bloch*.

In *Bloch v. Ribar*, 156 F.3d 673 (6th Cir. 1998), this Court recognized an informational privacy interest of constitutional dimension where the released information relates to matters "of a sexual, personal, and humiliating nature." *Lambert*, 517 F.3d at 440; *Bloch*, 156 F.3d at 685 ("Our sexuality and choices about sex, in turn, are interests of an intimate nature which define significant portions of our personhood."); *see also Lambert*, 517 F.3d at 441 ( the "clear principle emerging from *Bloch*" is the "right to be free from governmental intrusion into matters touching on sexuality and family life, and that to permit such an intrusion would be to strip away the very essence of her personhood").

Yet, like the district court, Defendants improperly seek to narrow *Bloch* to the specific circumstances of that case. They err in doing so.

***First***, Defendants argue that there is no general informational privacy right. Appellees' Br. 41-42. And it is true that "not all disclosures of private information

18

will trigger constitutional protection." *Bloch*, 156 F.3d at 684. But this is a straw man.

The cases Defendants cite rejecting a general informational privacy right, Appellees' Br. 41-42, offer little insight as to whether *Bloch* would be applicable in this case. Indeed, some of them even reaffirm Plaintiffs' position. For example, *NASA v. Nelson*, 562 U.S. 134, 147 n.10 (2011), squarely rejected the concurring opinion's (and Defendants' implicit) plea to outright overturn the right to informational privacy. And the opinion in *Leiser v. Moore*, 903 F.3d 1137 (10th Cir. 2018), viewed a Second Circuit case as "particularly relevant" in assessing what would constitute a constitutionally protected informational privacy interest, which in turn, held that "a constitutional 'privacy right exists with respect to a person's HIV status and transsexualism.'" *Id.* at 1145 (quoting *Matson v. Bd. of Ed.*, 631 F.3d 57, 64 (2d Cir. 2011)).

The Tenth Circuit's discussion on this issue was no trivial matter. "What distinguished [disclosure of medical information] from AIDS and transsexualism was that its disclosure would not bring about public opprobrium or expose a person to discrimination and intolerance." *Leiser*, 903 F.3d at 1145 (cleaned up) (quoting *Matson*, 631 F.3d at 67 n.7). Thus, contrary to what Defendants argue, *Leiser* further supports the body of case law that has acknowledged that informational privacy

exists in the limited circumstance of outing one's transgender status.  Appellants' Br. 53-54 (collecting cases).

***Second***, Defendants play fast and loose with the cases cited in *Bloch* to argue that *Bloch* purely concerned "sexual life or preferences," i.e., "sexual intercourse." Appellees' Br. 45-47.  Not so.  At least two cases cited in *Bloch* had nothing to do with "sexual intercourse—pregnancy, miscarriage, abortion, contraception, etc.," *id.* at 46.  *See Bloch*, 156 F.3d at 685 (citing, among others, *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir. 1980)).  The fact that *Bloch* cited to out-of-state precedents that had nothing to do with "one's sex life" indicates that something beyond pure sexual acts or preferences informed the right recognized by the court.

Moreover, the underlying authorities cited in *Bloch* directly negate Defendants' assertion that the nature of the information must be "humiliating."  *See Bloch*, 156 F.3d at 685 (citing, among others, *Eastwood v. Dep't of Corr.,* 846 F.2d 627, 631 (10th Cir. 1988); *Thorne v. City of El Segundo*, 726 F.2d 459, 468 (9th Cir. 1983)).  "[M]iscarriage, including the identity of the father," *Eastwood*, 846 F.2d at 631, is nothing to be ashamed of.  Likewise, one's "prior sexual activities" and "sexual associations," *Thorne*, 726 F.2d at 468, are nothing to be ashamed of.  At most, all these cases demonstrate is that the *forced outing* of such information (rather than the information itself) subjects individuals to humiliation.  Appellants' Br. 54-

56 (discussing how requiring that the information be "humiliating" would be incompatible with *Bloch*'s reasoning).[6]

**Third**, to concoct a three-part test divorced from the "clear principle" that *Lambert* identified from *Bloch*, *see* 517 F.3d at 441, Defendants rely on a string of case law that equally supports Plaintiffs' position that it is the "intimate," "personal identity" aspect of the information that truly matters. Appellees' Br. 47-48. Put differently, cases that did not find informational privacy (supposedly) for the matter not being "humiliating" enough are also cases where the information at issue did not "define significant portions of [one's] personhood." *Bloch*, 156 F.3d at 685.

To briefly discuss the cases not already addressed by Plaintiffs, Appellants' Br. 53 (discussing *Summe v. Kenton Cnty. Clerk's Off.*, 604 F.3d 257, 270-71 (6th Cir. 2010), and *Lee v. City of Columbus*, 636 F.3d 245, 261 (6th Cir. 2011)), three cases cited by Defendants are unreported, not binding, and have minimal persuasive value because the court provided little substantive analysis on the issue. Both *Doe v. City of Mansfield*, 2023 WL 1822208, at *3, and *Wiles v. Ascom Transport System, Inc.*, 478 F. App'x 283, 295 (6th Cir. 2012), are qualified immunity cases that brushed off the plaintiffs' informational privacy claims because they were not

---

[6]    Furthermore, Defendants do not provide any cogent answer as to how the district court would have authority at the motion to dismiss stage to decide whether Plaintiffs were humiliated by such disclosure, a patently factual dispute. Appellants' Br. 56–57.

dispositive—there was no "clearly established law."  Likewise, *Kenny v. Bartman*, No. 16-2152, 2017 WL 3613601, at *6 (6th Cir. May 19, 2017), set aside the *Bloch* analysis because the information in dispute involved the police's confiscation of plaintiff's camera.

And *Wurzelbacher* dismissed plaintiff's shotgun approach to pleading informational privacy.  675 F.3d at 586 ("Wurzelbacher does not allege that the improper database searches endangered a fundamental liberty interest.").  The court emphasized that the plaintiff "does not allege that he was subjected to a risk of bodily injury or that intimate information was disclosed to the public."  *Id.*

Finally, *Mattox v. City of Forest Park*, 183 F.3d 515 (6th Cir. 1999), was a First Amendment retaliation dispute and did not concern the right to informational privacy.

## C.    The Complaint Plausibly Alleges that Defendants Are Responsible for the Privacy Infringement Caused by the Policy.

Defendants freely concede that a birth certificate is used as an identity document that is demanded and produced pursuant to various statutory requirements under Tennessee law.  Appellees' Br. 51.  Nonetheless, Defendants claim that Plaintiffs' "voluntary production of their birth certificate cannot constitute a forced disclosure by the State."  *Id.*[7] Eliminating the ability of transgender people to correct

---

[7]    Defendants ignore that such disclosure is *compulsory* in numerous circumstances as a matter of Tennessee law.  Appellants' Br. 7.

their birth certificates and forcing them to either forgo their ability to produce it as proof of their identity in the myriad of circumstances acknowledged by the State, it is more than plausible that the consequence of the Policy is the disclosure of one's transgender status.  Not only is placing the blame on transgender people for the harms caused by disclosure of their transgender status offensive and inappropriate, but it is also not a question of law that should be considered at the pleading stage.

## IV.   Plaintiffs Plausibly Alleged the Policy Lacks Sufficient Justification.

Although the Policy is properly subject to heightened scrutiny under the equal protection clause or strict scrutiny under the due process clause, the Policy still fails any level of review.  Even standard rational basis review is "not a toothless one," *Mathews v. Lucas*, 427 U.S. 495, 510 (1976); *see also Berger v. City of Mayfield Heights*, 154 F.3d 621, 625 (6th Cir. 1998), and "there are limits to the latitude afforded states."  *Deen v. Egleston*, 597 F.3d 1223, 1230 (11th Cir. 2010).  "The State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational."  *Cleburne*, 473 U.S. at 446-47.

Indeed, rational basis review "imposes a requirement of some rationality in the nature of the class singled out."  *Rinaldi v. Yeager*, 384 U.S. 305, 308-09 (1966).  Courts must "insist on knowing the relation between the classification adopted and the object to be attained," which "ensure[s] that classifications are not drawn for the

purpose of disadvantaging the group burdened by the law." *Romer*, 517 U.S. at 632, 633.

Here, the Policy is "so far removed from [the asserted] justifications that … it [is] impossible to credit them." *Id.* at 635.  Indeed, the Policy actually undermines the very interests Defendants proffer.

*First*, Defendants argue that the Policy "protect[s] the integrity and accuracy of birth certificates by ensuring that they accurately reflect one's sex based on external genitalia at birth."  Appellees' Br. 31-32.  But Defendants ignore that such an interest is not furthered where Tennessee allows numerous other corrections to the birth certificates for other purposes.  Appellants' Br. 43-44.  Further unaddressed by Defendants is that the integrity and accuracy of birth certificates are fundamentally *hindered* by operation of the Policy.

A critical purpose of providing people with copies of their own birth certificates is contemporaneous identity verification, connecting a given individual to a given birth certificate.  That is why, for example, Tennessee provides several avenues for individuals to correct their birth certificates to bring them in line with their contemporaneous identity based on changes that occurred after birth, i.e., adoption or name changes, and even sex for people born with ambiguous genitalia. But Defendants do not deny that their Policy undermines the ability of transgender people to prove that they are the same individuals reflected on their birth certificates.

The Policy also causes mismatches with their other identity documents, thereby causing confusion and calling into question the integrity and accuracy of identification systems.

Defendants' *ipse dixit* that "prohibiting subsequent alterations to the facts of birth" justifies the Policy, Appellees' Br. 32, constitutes precisely the type of circular justification courts have rejected. "[A] classification of persons undertaken for its own sake[] [is] something the Equal Protection Clause does not permit." *Romer*, 517 U.S. at 635.

Viewing the Policy in operation, "accuracy and integrity" are not driving the Policy and cannot logically provide a rational basis for it.

***Second***, Defendants argue that the Policy "aid[s] the public health of the state." Appellees' Br. 32. Defendants cite "public health and research capabilities, including statistical studies related to maternal health, public-health surveillance, and local health planning" as falling under this banner. *Id.* But Defendants fail to explain how the Policy "promot[es] the public health and foster[s] research efforts" or why barring transgender persons from changing the sex marker on their birth certificates would impede these efforts. *City of Cleburne*, 473 U.S. at 446, 449-50 (holding ordinance did not pass rational basis scrutiny where proffered justification

was too attenuated from the classification).[8]    While Defendants cite legitimate government interests generally, absent a stronger connection between the Policy and these stated justifications, this argument cannot provide a rational basis for the Policy.[9]

*Third*, Defendants' justification of the Policy based on an interest in maintaining consistency for the State's administrative and auditing functions makes no sense.    Not only do Defendants fail to account for the fact that the State does allow changes to other fields on birth certificates, including names and even sex designations for non-transgender people, they also ignore that such amendments are permitted for transgender people for other Tennessee identity documents like driver's licenses and federal identity documents.    Complaint, R.59, PageID#390. The Supreme Court has stated that a policy will not withstand rational basis review

---

[8]    The information used for public health surveillance and research comes from Tennessee's "statistical file," also known as the Tennessee Birth Statistical System. The information shared for this purpose is not a person's birth certificate.    Moreover, a person's birth certificate can be changed without changing the statistical file. Indeed, Tennessee permits other people to correct the sex designation on their birth certificates (through an affidavit) without changing the statistical file.    *See* Pls' MSJ Reply, R.93, PageID#1398-99.

[9]    Defendants have no persuasive response to the indisputable fact that nothing precludes them from *both* (a) retaining original birth certificates, *and* (b) providing transgender people like Plaintiffs with copies of corrected birth certificates consistent with their gender identity.    That simple fact alone is sufficient to resolve this appeal, without more.    Indeed, Defendants cannot deny that they employ this exact same practice for other birth certificate changes, both retaining original versions and providing corrected copies to the individuals at issue.

26

where it is "riddled with exceptions." *Eisenstadt v. Baird*, 405 U.S. 438, 449 (1972). The Policy fails even rational basis review under this proffered justification.

**Fourth**, Defendants cannot justify the Policy by asserting that it "protects" women's athletics.[10] The Policy does not rationally further any such interest because the Policy does not ban any athletics participation not already banned,[11] and Tennessee does not expressly prohibit access to sex-designated facilities consistent with a transgender person's identity. *See* Tenn. Code Ann. § 49-2-801 *et seq.*; *cf. Dodds v. United States Dep't of Educ.*, 845 F.3d 217 (6th Cir. 2016). Defendants have no response to this glaring irrationality in their justification. Moreover, the Policy is a grossly overbroad measure—applying to all transgender people born in Tennessee—for targeting a subset of a subset of that population: transgender people, who attend public schools, who wish to participate in women's athletics or seek access to sex-designated facilities consistent with their identity. *Cf. Romer*, 517 U.S. at 632.

There is no rational basis that can be credited at this stage of the proceedings.

---

[10]   Defendants did not advance this argument below and do so for the first on appeal. "This court does not ordinarily address new arguments raised for the first time on appeal." *Michigan Bell Tel. Co. v. Strand,* 305 F.3d 580, 590 (6th Cir. 2002).

[11]   Tennessee already requires the submission of other evidence for a student to participate in sex-designated sports when they submit a non-original birth certificate. *See* Tenn. Code Ann. § 49-6-310.

## <u>CONCLUSION</u>

This Court should reverse the dismissal of Plaintiffs' equal protection and informational privacy claims and remand the case for further proceedings.

Dated February 1, 2024.                                Respectfully submitted,

<div style="display: flex; justify-content: space-between;">

<div>

John T. Winemiller
MERCHANT & GOULD P.C.
800 S. Gay Street, Ste. 2150
Knoxville, TN 37929
(865) 380-5960
jwinemiller@merchantgould.com

River Lord
MERCHANT & GOULD P.C.
150 South Fifth Street, Ste. 2200
Minneapolis, MN 55402
(612) 332-5300
rlord@MerchantGould.com

Gavin R. Villareal
Maddy R. Dwertman
BAKER BOTTS L.L.P.
401 S. 1st Street, Ste. 1300
Austin, TX 78704
(512) 322-2500
gavin.villareal@bakerbotts.com
maddy.dwertman@bakerbotts.com

Brandt Thomas Roessler
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
(212) 408-2500
brandt.roessler@bakerbotts.com

</div>

<div>

*/s/ Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
(212) 809-8585
ogonzalez-pagan@lambdalegal.org

Sasha Buchert
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
111 K Street NE, 7th Floor
Washington, DC 20002
(202) 804-6245
sbuchert@lambdalegal.org

Joshua Lee
BAKER BOTTS L.L.P.
700 K Street, NW
Washington, DC 20001
(202) 639-7700
joshua.lee@bakerbotts.com

</div>

</div>

*Counsel for Plaintiffs-Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this brief contains 6,483 words.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P.  32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman font size 14.

<div style="text-align: right">

*/s/ Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan

</div>

## <u>CERTIFICATE OF SERVICE</u>

On February 1, 2024, a true and correct copy of the foregoing was filed with

the electronic case filing (ECF) system of the U.S. Court of Appeals for the Sixth

Circuit, which currently provides electronic service on all counsel of record.

<div align="right">

*/s/ Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan

</div>