No. 23-5669

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

_____

KAYLA GORE ET AL.,

*Plaintiffs-Appellants*,

v.

WILLIAM LEE ET AL.,

*Defendants-Appellees*.

_____

On Appeal from the Judgment of the United States
District Court for the Middle District of Tennessee
(No. 3:19-cv-00328)

## RESPONSE TO PETITION FOR REHEARING

Jonathan Skrmetti
 *Attorney General & Reporter*
 *of the State of Tennessee*

Steven J. Griffin
 *Senior Counsel for Strategic Litiga-*
 *tion & Assistant Solicitor General*

Sara E. Sedgwick
 *Senior Assistant Attorney General*

J. Matthew Rice
 *Solicitor General*
 *Counsel of Record*

Virginia N. Adamson
 *Strategic Litigation Counsel &*
 *Assistant Solicitor General*

Office of Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee
(615) 532-6026
matt.rice@ag.tn.gov

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

BACKGROUND .........................................................................................1

REASONS FOR DENYING THE PETITION .........................................................3

I.    Plaintiffs' Equal-Protection Challenge Does Not Merit En Banc Review. ....3

II.   Plaintiffs' Substantive-Due-Process Challenge Does Not Merit En Banc Review… ..............................................................................8

III.  The Panel Understood the Relevant Policies and Requested Relief. ............14

CONCLUSION .........................................................................................16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Barber v. Overton*,
  496 F.3d 449 (6th Cir. 2007) ................................................................12

*Bloch v. Ribar*,
  156 F.3d 673 (6th Cir. 1998) .................................................. 10, 11, 12

*City of Cleburne v. Cleburne Living Ctr.*,
  473 U.S. 432 (1985) .................................................................................4

*Corbitt v. Sec'y of the Ala. L. Enf't Agency*,
  115 F.4th 1335 (11th Cir. 2024) .......................................................5, 6

*Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*,
  274 F.3d 377 (6th Cir. 2001) .................................................. 12, 13, 15

*Dobbs v. Jackson Women's Health Org.*,
  597 U.S. 215 (2022) .............................................................................8, 9

*Dycus v. Dycus*,
  949 N.W.2d 357 (Neb. 2020) ...............................................................12

*Engquist v. Or. Dep't of Agric.*,
  553 U.S. 591 (2008) .................................................................................4

*Flaskamp v. Dearborn Pub. Schs.*,
  385 F.3d 935 (6th Cir. 2004) ...............................................................11

*Fowler v. Stitt*,
  104 F.4th 770 (10th Cir. 2024) .........................................................7, 8

*Geduldig v. Aiello*,
  417 U.S. 484 (1974) .................................................................................5

*Gore v. Lee*,
  107 F.4th 548 (6th Cir. 2024) ................................................... *passim*

*Kallstrom v. City of Columbus*,
  136 F.3d 1055 (6th Cir. 1998) ................................................... 10, 12

*Lambert v. Hartman*,
    517 F.3d 433 (6th Cir. 2008) ................................................................11

*Mitts v. Bagley*,
    626 F.3d 366 (6th Cir. 2010) .................................................. 3, 10, 13

*Obergefell v. Hodges*,
    576 U.S. 644 (2015) ...............................................................................11

*Powell v. Schriver*,
    175 F.3d 107 (2d Cir. 1999) .................................................................14

*Powers v. Ohio*,
    499 U.S. 400 (1991) .................................................................................6

*Shaw v. Reno*,
    509 U.S. 630 (1993) .................................................................................3

*Trump v. Hawaii*,
    585 U.S. 667 (2018) .................................................................................8

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977) ..............................................................................4, 7

*Waskul v. Washtenaw Cnty. Cmty. Mental Health*,
    979 F.3d 426 (6th Cir. 2020) ...............................................................16

*Wilson v. Collins*,
    517 F.3d 421 (6th Cir. 2008) ...............................................................10

**Statutes:**

Tenn. Code Ann. § 68-3-104(6).................................................................2

Tenn. Code Ann. § 68-3-203(a).................................................................2

Tenn. Code Ann. § 68-3-203(f) .................................................................2

Tenn. Code Ann. § 68-3-301(a).................................................................1

**Rules and Regulations:**

6 Cir. I.O.P. 35(a) ..................................................................................................3

6 Cir. I.O.P. 40(a)(1) .............................................................................................3

Fed. R. App. P. 35(a) ............................................................................................3

Fed. R. App. P. 35(b)(1)(B) ................................................................................14

Tenn. Comp. R. & Regs. 1200-07-01-.01(1) .......................................................2

Tenn. Comp. R. & Regs. 1200-07-01-.10(2) .......................................................2

Tenn. Comp. R. & Regs. 1200-07-01-.10(7) .......................................................2

**INTRODUCTION**

Tennessee birth certificates record certain information (sex based on genitalia at birth), while Plaintiffs would prefer they record different information (gender identity). Rather than seek to change that policy through the political process, Plaintiffs ask the federal judiciary to constitutionalize the contents of state birth certificates. But the Constitution has nothing to say on the issue. Tennessee does not somehow discriminate against transgender persons by maintaining a record of a person's sex based on external genitalia at birth. Nor does the Fourteenth Amendment confer a substantive due process right requiring States to amend their own records to include a person's gender identity. A panel of this Court rightly recognized as much. And Plaintiffs' petition provides no reason to second-guess that decision. The panel's decision commits no "precedent-setting error of exceptional public importance" and conflicts with no "Supreme Court or Sixth Circuit precedent." 6 Cir. I.O.P. 35(a). The Court should deny the petition.

**BACKGROUND**

Tennessee issues a "certificate of birth" for each live birth within its borders. Tenn. Code Ann. § 68-3-301(a). That certificate includes the child's "sex," meaning biological sex as determined "by the appearance of external genitals at the time of birth." Compl., R.59, at 414; *see id.* at 394, 398, 402, 405.[1] By law, official records

---

[1] All record pincites refer to the "Page ID" numbers in the ECF file stamps.

like birth certificates "remain the property" of Tennessee's Office of Vital Records. Tenn. Code Ann. § 68-3-104(6); Tenn. Comp. R. & Regs. 1200-07-01-.01(1).

"[T]o protect the integrity and accuracy of [these] vital records," state law restricts their amendment. Tenn. Code Ann. § 68-3-203(a). Relevant here, the Registrar "shall" amend a birth certificate if presented with evidence establishing that "an original entry on a certificate was factually inaccurate at the time of recordation." *Id.* § 68-3-203(f). Amendments after a year from birth generally must be supported by an affidavit identifying "the incorrect [certificate] data" and "documentary evidence" of the "alleged facts." Tenn. Comp. R. & Regs. 1200-07-01-.10(2). Typically, accurately recorded information cannot be amended (e.g., a person's date of birth and sex), though Tennessee law does permit some voluntary amendments (e.g., a name change upon court order). Tenn. Comp. R. & Regs. 1200-07-01-.10(7).

Plaintiffs sued Tennessee's governor and health commissioner to challenge the State's amendment policy for the sex designation on Tennessee birth certificates (the "Amendment Policy" or "Policy"). They alleged that the Fourteenth Amendment's Equal Protection and Due Process Clauses require Tennessee to amend the sex designation on their birth certificates to reflect their "gender identity"—i.e., their "internal sense of their own gender." Compl., R.59, at 375-79, 381, 389, 415-16. The district court held that Plaintiffs failed to state a claim and dismissed their

complaint. Op., R.110, at 2664-66. A panel of this Court affirmed, over Judge White's dissent. *Gore v. Lee*, 107 F.4th 548 (6th Cir. 2024).

**REASONS FOR DENYING THE PETITION**

The panel's thorough opinion does not warrant en banc review. Rehearing en banc "is an extraordinary procedure," 6 Cir. I.O.P. 35(a), that "is not favored and ordinarily will not be ordered" absent compelling circumstances, Fed. R. App. P. 35(a); *see Mitts v. Bagley*, 626 F.3d 366 (6th Cir. 2010) (Sutton, J., concurring in denial of rehearing en banc). And the circumstances here come nowhere close to meeting that high standard. Plaintiffs identify no "precedent-setting error of exceptional public importance" and no "direct[] conflict[] with Supreme Court or Sixth Circuit precedent." 6 Cir. I.O.P. 35(a). Nor does Plaintiffs' rehashing of properly rejected arguments call for rehearing. *See* 6 Cir. I.O.P. 40(a)(1). The panel correctly analyzed the equal-protection and substantive-due-process issues presented. Its decision should stand.

## I.    Plaintiffs' Equal-Protection Challenge Does Not Merit En Banc Review.

The full Court need not grant rehearing to address Plaintiffs' meritless equal-protection claims. To state an equal-protection claim, a plaintiff must first identify the classifications drawn by the challenged policy. A law contains a facial classification when it differentiates between persons based on a particular characteristic. *Shaw v. Reno*, 509 U.S. 630, 642 (1993). For facially neutral legislation, a plaintiff

3

must show that a law disparately impacts a particular group *and* prove that the legislature acted with "discriminatory intent or purpose" in enacting it. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977). "When those who appear similarly situated are . . . treated differently," courts examine the government's basis for the differential treatment. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 602 (2008). Courts apply strict scrutiny when a law classifies based on a suspect class and intermediate scrutiny when a law classifies based on a quasi-suspect class. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440-41 (1985). Otherwise, "legislation is presumed to be valid" and will be upheld if the classification "is rationally related to a legitimate state interest." *Id.* at 440.

The panel decision faithfully applied those principles and properly rejected Plaintiffs' ever-evolving theories. The Petition both mischaracterizes the panel's decision and misconstrues the caselaw.

1. The Petition (at 1, 5-6) claims that the panel failed to recognize a "plain[]" sex classification. Not true. To be sure, Tennessee birth certificates "classif[y] persons as 'male' or 'female.'" Pls. Br. 32-33. But Plaintiffs *did not challenge that classification*. At no point in this litigation have Plaintiffs "challenge[d] the State's practice of assigning a newborn a 'sex' of 'male' or 'female.'" Op., R.110, at 2609. Instead, as the panel recognized, Plaintiffs "challenge[d] only Tennessee's policy of barring residents from 'correcting' their sex based on their gender identity." *Gore*,

107 F.4th at 555 (quoting Compl., R.59, at 15). Plaintiffs' entire theory has been that *the Amendment Policy* (i.e., declining to amend certificates to include gender identity) "treats transgender persons . . . differently from similarly situated cisgender persons," not that it treats males differently from females. Pls.' Br. 29; Compl., R.59, at 376; *see also* Pet. 1, 4. And at oral argument, Plaintiffs conceded this case only concerned the "Amendment Policy." Oral Arg. at 12:35-13:49.

That Amendment Policy imposes no sex classification. *Gore*, 107 F.4th at 555. It creates two groups: (1) persons with birth certificates that accurately reflect their genitalia at birth, and (2) persons with birth certificates that do not accurately reflect their genitalia at birth. The first group "includes members of both sexes"—neither boys nor girls can amend their birth certificate if it accurately reflects their sex at birth based on external genitalia. *See Geduldig v. Aiello*, 417 U.S. 484, 496 n.20 (1974). The second group also "includes members of both sexes"—both boys and girls can amend their birth certificate if it inaccurately recorded their sex at birth based on external genitalia. *See id.* This "lack of identity" between sex and the "groups" created by the Amendment Policy means no facial "sex" classification exists. *Id.*

The Eleventh Circuit agrees. *Corbitt v. Sec'y of the Ala. L. Enf't Agency*, 115 F.4th 1335 (11th Cir. 2024). It recently rejected similar arguments that Alabama's driver's-license-amendment policy "impose[d] a sex-based classification" because

5

it required every applicant, "without regard to [their] genitalia," to present certain proof and thus did not treat people differently based on sex. *Id.* at 1346-47.

The Petition claims (at 6) that the panel "dramatically departed from decades of equal protection sex discrimination jurisprudence" by "concluding that laws that apply equally to men and women cannot classify based on sex." But the panel did not hold that the government can classify by sex yet avoid sex-based scrutiny by harming males and females "in equal degree." Pet. 6 (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991)). It held that the Amendment Policy contains no sex classification at all. *Gore*, 107 F.4th at 555. A law taxing all citizens, for example, burdens both men and women, but it does not burden both men and women *through a sex classification*. The same goes here.

2. In a one-sentence argument, Plaintiffs claim that the Court should go en banc to decide "whether classifications based on transgender status independently warrant heightened scrutiny." Pet. 7. As the panel explained, though, transgender status does not uniquely warrant expanding the list of quasi-suspect classifications for the first time in nearly fifty years. *Gore*, 107 F.4th at 558-59; Resp. Br. 21-24.

This case is also a poor vehicle for addressing this question because the Amendment Policy contains no transgender classification. Tennessee designates a person's sex on the birth certificate based on that person's external genitalia. And no one—whether transgender or otherwise—can amend a "male" or "female"

designation unless it does not match that person's genitalia at birth. So there is an across-the-board "ban against changing a birth certificate's sex designation [that] applies to transgender and cisgender persons alike." Op., R.110, at 2619 n.33; *see* Resp. Br. 12-17.

At bottom, Plaintiffs really take issue with the Policy's perceived disparate impact on transgender persons. But to make out a disparate-impact claim, Plaintiffs needed to allege facts showing that a "discriminatory intent or purpose" underlies the facially neutral policy. *Arlington Heights*, 429 U.S. at 265. They have not—and cannot—do so here. *See Gore*, 107 F.4th at 559-60; Resp. Br. 17-20. Because Plaintiffs cannot make the threshold showing required to prevail on a transgender-classification theory, the en banc Court may not even reach the quasi-suspect-class question when resolving any rehearing of the case.

3. Plaintiffs point (at 2, 4) to the Tenth Circuit's decision in *Fowler v. Stitt*, 104 F.4th 770 (10th Cir. 2024), to support rehearing. But *Fowler* held that Oklahoma's birth certificate policy stemmed from animus. *Id.* at 784-88. The Tenth Circuit highlighted evidence that the policy resulted from the governor's "specifically instruct[ing]" the relevant state agency that it could no longer change "the birth certificates of transgender people to reflect their . . . gender identity." *Id.* at 787. And the panel held this change was "'inexplicable by anything but animus toward' transgender people." *Id.* at 788 (citation omitted). No such animus motivated the

Amendment Policy here, which dates back to at least the 1970s and "long predates medical diagnoses of gender dysphoria." *Gore*, 107 F.4th at 558, 560.

The panel here, moreover, explained that *Fowler*'s rational-basis review missed the mark. *Fowler* held that Oklahoma's interest in the accuracy of vital records was not rationally related to its policy because the State could have issued amended certificates to individuals while retaining the originals. 104 F.4th at 795. But rational-basis review "requires only that some plausible reason supports the classification." *Gore*, 107 F.4th at 561 (cleaned up). And "[a] policy requiring an error before changing" a record of birth rationally furthers many, legitimate state interests. *See id.* at 560-61; Resp. Br. 31-34. Courts "hardly ever strike[] down a policy as illegitimate under rational basis scrutiny," *Trump v. Hawaii*, 585 U.S. 667, 705 (2018), and this is not a case that calls for that extraordinary measure. Plaintiffs may disagree with the policy choices underlying the State's approach to birth certificates, but Tennessee's rational policy survives constitutional review. *See* Resp. Br. 31-34.

## II.    Plaintiffs' Substantive-Due-Process Challenge Does Not Merit En Banc Review.

Nor should the full Court grant rehearing to address Plaintiffs' substantive-due-process claim. The Supreme Court has interpreted the Due Process Clause to "provide[] substantive, as well as procedural, protection[s] for 'liberty.'" *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 237 (2022). But any newly asserted substantive-due-process right must be "fundamental to our scheme of ordered

liberty" and "deeply rooted in this Nation's history and tradition." *Id.* at 238 (citation omitted). Plaintiffs do not even attempt to satisfy that test—nor could they. *Gore*, 107 F.4th at 561-62. Instead, Plaintiffs package their claims as asserting a supposed due-process right to "informational privacy." Pet. 3. While "two cases from [this] circuit . . . recognize narrow substantive due process rights to prevent the disclosure of certain private information," the application of those cases to the facts alleged here yields no viable claim or en-banc-worthy issue. *Gore*, 107 F.4th at 563.

1. Plaintiffs' "threshold problem" is that the Amendment Policy does not "disclose their transgender status." *Id.*; *see* Resp. Br. 49-52. Plaintiffs still cannot identify a situation, outside the counselor-licensure context, when Tennessee law *requires* disclosure of a birth certificate. *Gore*, 107 F.4th at 563, 565; *see* Pet. 11-12. And even if Tennessee law did require disclosure, the Petition never explains how presenting a Tennessee birth certificate reveals a person's transgender status. According to the Complaint, determining someone's transgender status requires knowing "not only a . . . person's sex (based on birth appearance), but also the transgender person's *gender identity.*" Op., R.110, at 2649. And Plaintiffs do not "allege any facts showing that Tennessee has disclosed or forced them to disclose their gender identity." *Gore*, 107 F.4th at 564. Plaintiffs' argument seems to rest on the very sex stereotyping they purportedly denounce: an assumption that external appearance "discloses" one's gender identity. Compl., R.59, at 383, 386; Pls.' Br.

35, 46.  These deficiencies highlight that Plaintiffs' claims turn on factbound, state-law driven arguments—not the stuff of en banc review.  *Gore*, 107 F.4th at 563-64; 6 Cir. I.O.P. 35(a).

2.  Plaintiffs' chief contention (at 8-10) is that "consideration by the full Court is warranted to correct the misapplication of this Court's informational privacy jurisprudence."  But alleged "errors in the application of correct precedent to the facts of [a] case" is what this Court says *does not* suffice for en banc review.  6 Cir. I.O.P. 35(a); *see Mitts*, 626 F.3d at 370 (Sutton, J., concurring).  Regardless, the Court need not grant review because the panel correctly applied the cited precedents.

This Circuit has repeatedly "held that the Constitution does not encompass a general right to nondisclosure of private information."  *Wilson v. Collins*, 517 F.3d 421, 429 (6th Cir. 2008) (cleaned up).  Instead, it has "restrict[ed] the right of privacy to those rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty.'"  *Id.* (citation omitted).  And it has recognized such a right in only two instances: (1) when the disclosure of sensitive information to particularly dangerous persons "creates a substantial risk of serious bodily harm," *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1064 (6th Cir. 1998), and (2) when the disclosure of humiliating, sexual details invades the right to privacy in sexual matters, *Bloch v. Ribar*, 156 F.3d 673, 681-82 (6th Cir. 1998).  The "right" that Plaintiffs seek to

vindicate cannot be squared with this "restrictive view of informational privacy." *Lambert v. Hartman*, 517 F.3d 433, 441 (6th Cir. 2008).

The Petition (at 9) cannot shoehorn Plaintiffs' claims into the limited right recognized in *Bloch*. First, *Bloch*'s holding "was premised on the notion that the disclosure of private sexual information implicated . . . the fundamental right of privacy in one's sexual life." *Lambert*, 517 F.3d at 441. But a person's transgender status reveals nothing about the person's sex life or preferences. *See* Resp. Br. 46-47. Second, *Bloch* focused on the disclosure of "humiliating" information. *Id.* at 47-48. But "[t]he disclosure of one's biological sex, a medical fact of birth collected by the State about everyone, does not remotely compare to the government's gratuitous disclosure of the details of a rape at a press conference." *Gore*, 107 F.4th at 565. Finally, this Court has treated the "extent of dissemination as an important factor" in information privacy claims. *Id.* (quoting *Flaskamp v. Dearborn Pub. Schs.*, 385 F.3d 935, 946 (6th Cir. 2004)). But any "disclosure of one's biological sex" through a birth certificate is "limited" and "highly regulated"—another fact-dependent consideration distinguishing *Bloch*. *Id.*; Resp. Br. 53-54.

Plaintiffs' newfound reliance on *Obergefell v. Hodges*, 576 U.S. 644 (2015), changes nothing. That decision did not, as Plaintiffs suggest (at 9), create a free-floating right to "define and express" one's gender identity. *Obergefell* held that "same-sex couples may exercise the fundamental *right to marry*." *Id.* at 681

(emphasis added).  Plaintiffs' broad reading would lead to absurd results, like the "right" to refuse "to identify . . . as a mere number" on a social security card, Op., R.110, at 2654 n.62, or the right to identify as someone's spouse even if they seek a divorce, *Dycus v. Dycus*, 949 N.W.2d 357, 367 (Neb. 2020).  That Plaintiffs never presented this argument to the panel only highlights their strained efforts to fit this case within *Bloch*'s narrow confines and further cuts against first-instance review now.

Plaintiffs likewise stated no claim under *Kallstrom*.  That case "created a narrowly tailored right" that only applies when (1) the government discloses sensitive information to persons who are "particularly dangerous *vis-à-vis the plaintiffs*" and (2) that disclosure creates a specific, "substantial risk of serious bodily harm." *Barber v. Overton*, 496 F.3d 449, 455-56 (6th Cir. 2007) (quotations omitted).  The panel recognized that governing test and held that Plaintiffs failed to "allege[] a substantial risk of bodily harm from Tennessee's amendment policy." *Gore*, 107 F.4th at 564.

Plaintiffs say (at 9-10) that the panel's application of *Kallstrom* creates "tension" with *Deja Vu of Nashville, Inc. v. Metropolitan Government of Nashville and Davidson County*, 274 F.3d 377, 394 (6th Cir. 2001).  But as the panel explained, *Deja Vu* involved a disclosure that posed "a very real threat" to the plaintiffs' "personal security and bodily integrity, and possibly their lives." *Gore*, 107 F.4th at 564 (quoting *Deja Vu*, 274 F.3d at 394-95).  There, the court found a substantial risk of

12

bodily harm based on specific past incidents where entertainers were "stalked, har-assed, and injured by customers." *Id.* By contrast, Plaintiffs here allege no specific threat; they allege disclosure to voting officials, employers, medical professionals, and other government employees. Compl., R. 59, at 386, 394, 397, 401, 405. As the panel explained, Plaintiffs' alleged general "aware[ness] of the high incidence of violence" against transgender individuals does not rise to the specific threat level required by this Court's precedent. *Gore*, 107 F.4th at 564 (quoting Compl., R.59, at 394). If anything, *Deja Vu* confirms the correctness of the panel decision: *Deja Vu* specifically held that the plaintiffs could be compelled to share their personal information with a municipal licensing board to ensure regulatory compliance, 274 F.3d at 395—a situation akin to presenting one's birth certificate to the government to confirm citizenship.

Plaintiffs then pivot (at 10-11) to contending that the panel misapplied the motion-to-dismiss standard by ignoring allegations about the threat posed to Plain-tiffs. Even if true, that wouldn't be en-banc worthy. *See* 6 Cir. I.O.P. 35(a); *Mitts*, 626 F.3d at 370 (Sutton, J., concurring). And it is not true: The panel did not ignore any of the cited allegations (at 10-11). It correctly held that Plaintiffs' allegations referenced "generalized risks" that "f[e]ll well short" of the imminent threat "of bod-ily harm or death" involved in this Circuit's cases. *Gore*, 107 F.4th at 564.

13

3.  Finally, Plaintiffs claim (at 9, 12) "tension" between the panel decision and a Second Circuit precedent.  But *Powell v. Schriver*, 175 F.3d 107 (2d Cir. 1999), doesn't present the kind of conflict meriting en banc review.  *Cf.* Fed. R. App. P. 35(b)(1)(B).  "The key allegation" there "was that a prison official disclosed to inmates that another inmate had a sex-change surgery and was HIV positive."  *Gore*, 107 F.4th at 565.  Here, Plaintiffs challenge a policy that maintains correct information about "a medical fact of birth" in a government record.  *Id.*; Compl., R.59, at 381, 385-86.  As the panel aptly noted, "difference, not similarity, captures the comparison" with *Powell*.  *Gore*, 107 F.4th at 565.

## III.   The Panel Understood the Relevant Policies and Requested Relief.

Contra Plaintiffs' claim about the panel's "fundamental misapprehensions" (at 13-16), the panel fully understood Plaintiffs' allegations and requested relief.  So no rehearing is necessary.  *See* 6 Cir. I.O.P. 40(a)(1).

Plaintiffs first argue (at 13-14) that "a person's sex is more than their external genitalia at birth" and that the panel was "required to accept" that proposition "as true."  But the question here is not the "proper" understanding of "sex" or what "sex" means in the abstract.  As the panel recognized, the relevant question is:  What does "sex" *on Tennessee birth certificates* reflect?

Plaintiffs' allegations provide the answer.  The Complaint clearly (and repeatedly) alleges that the sex designation on Tennessee birth certificates "conveys the

[S]tate's message that sex is determined solely by the appearance of external genitals at the time of birth."  Compl., R.59, at 414; *see id.* at 394, 398, 402, 405.  And it confirms that a person's "gender identity" is not "considered at the time of birth" when recording the sex designation.  *Id.* at 381.  Plaintiffs' panel-stage briefing reiterated that "[i]t is the practice of Tennessee, for purposes of determining the sex designation on birth certificates, to rely solely on third-parties' observations of the external genitalia of newborns."  Pls.' Br. 10-11.  Far from "purposely ignor[ing] the allegations in Plaintiffs' Complaint," Pet. 13, the panel took stock of the Complaint's allegations about what the State conveys through the sex designation.  And it recognized that the Constitution allows Tennessee to "decide how to use the word 'sex' in government documents."  *Gore*, 107 F.4th at 557.

Next, Plaintiffs assert (at 15) that the panel erred in concluding that the State's correction policy for ambiguous genitalia is not evidence of transgender discrimination.  But Plaintiffs' unpled allegations about ambiguous genitalia do not demonstrate differential treatment based on transgender status:  Allowing persons born with ambiguous genitalia to amend their sex designation does not show that *transgender persons* are treated differently from *cisgender persons*; it shows that persons with ambiguous genitalia are treated differently from persons without ambiguous genitalia.  *See* Resp. Br. 16-17.  And "it is not evidence of animus . . . for a State to permit the correction of a biological sex designation if the sex of the child was ambiguous

15

at birth and time shows the child to be biologically male rather than female or vice versa." *Gore*, 107 F.4th at 560.

Finally, Plaintiffs claim (at 15) that the panel majority "entirely misconstrued" Plaintiffs' requested relief, claiming it is "not true" that Plaintiffs asked for "changes whenever individuals self-report that their gender identity conflicts with the biological sex listed on their birth certificate." But at oral argument, Plaintiffs conceded that their theory was that the Constitution requires the State to change a birth certificate's listed sex at a person's mere request. Oral Arg. at 39:07-33. That is, "self-report[ing]" one's gender identity would suffice. *Id.* at 6:41-55; *see also id.* at 4:48-6:55 (clarifying Plaintiffs' theory). Indeed, the Complaint requested that Tennessee "immediately issue birth certificates to Plaintiffs . . . accurately reflecting their true sex, consistent with their gender identity"—i.e., without verification beyond Plaintiffs' say-so—and requested similar relief for other Tennessee-born transgender persons. Compl., R.59, at 415. Plaintiffs cannot change theories now, much less by footnote in a supplemental brief (cited at Pet. 16). *See Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020). Nor is it clear how an altered request for relief helps Plaintiffs' constitutional case.

## CONCLUSION

The Court should deny the petition for rehearing.

Dated: October 16, 2024                    Respectfully submitted,


                                           */s/J. Matthew Rice*
Jonathan Skrmetti                          J. Matthew Rice
  *Attorney General & Reporter*              *Solicitor General*
  *of the State of Tennessee*                *Counsel of Record*

Steven J. Griffin                          Virginia N. Adamson
  *Senior Counsel for Strategic Litiga-*     *Strategic Litigation Counsel &*
  *tion & Assistant Solicitor General*       *Assistant Solicitor General*


Sara E. Sedgwick                           Office of Tennessee Attorney General
  *Senior Assistant Attorney General*      P.O. Box 20207
                                           Nashville, Tennessee
                                           (615) 532-6026
                                           matt.rice@ag.tn.gov


                                           *Counsel for Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE

This brief complies with the Court's type-volume limitations of Fed. R. App. P. 35(b)(2)(A) because it contains 3,820 words.

This brief also complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in proportionally spaced typeface using Times New Roman 14-point font in Microsoft Word.

*/s/J. Matthew Rice*
J. MATTHEW RICE
*Solicitor General of Tennessee*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25(d) and 6 Cir. R. 25(f), I certify that a true and exact copy of this brief has been filed via the Court's electronic filing system on October 16, 2024.  That system sends a Notice of Docket Activity to all registered attorneys in this case.  Under 6 Cir. R. 25(f)(1)(A), "[t]his constitutes service on them and no other service is necessary."

*/s/J. Matthew Rice*
J. MATTHEW RICE
*Solicitor General of Tennessee*